Lorenzo Edward ERVIN, Jr.,
Plaintiff,

v.

Billy Ray LANIER, Individually and in his official capacity as Public Safety Officer, Agency for International Development, U. S. Department of State, et al., Defendants.

No. 74 C 1681.

United States District Court,
E. D. New York.

Nov. 24, 1975.

---

Lorenzo Edward Ervin, Jr. (Pro Se).

Haight, Gardner, Poor & Havens, New York City, for Pan American World Airways, Inc.

## OPINION and ORDER

PLATT, District Judge.

Defendant, Pan American World Airways, Inc. ("Pan Am"), moves for an order pursuant to FRCP 12(b)(6) dismissing plaintiff's complaint as against said defendant insofar as it is based on alleged violations of Title 42, United States Code §§ 1983, 1985 or 1986 on the grounds that it is time-barred by the applicable Statute of Limitations, and inso-

far as it is based on alleged violations of various federal criminal statutes on such grounds and the further ground that it fails to state a claim upon which relief can be granted.

### The Complaint

In his complaint plaintiff seeks to recover $1,000,000 against each of the named defendants for an alleged conspiracy to violate his civil rights in connection with his arrest in the Republic of Germany by various law enforcement officials of the United States government between September 22 and September 24, 1969, and for neglecting to prevent the "illegal surveillance, force, interrogation and detention" of the plaintiff.

Plaintiff commenced his action by filing a complaint in this Court on or about November 27, 1974.

Jurisdiction is alleged to be obtained under 28 U.S.C. §§ 1331(a) and 1343 and the Constitution of the United States, and also by reason of diversity of citizenship between the parties under 28 U.S.C. § 1332.

The complaint alleges that plaintiff is a prisoner of the Federal Prison System at the U. S. Penitentiary, Marion, Illinois; that he was charged with the piracy of an Eastern Airlines jet, No. 955 en route from Atlanta, Georgia, to Miami, Florida, and the kidnapping of its pilot on February 25, 1969; that he was indicted by a grand jury in the Northern District of Georgia on March 10, 1969; was tried and subsequently found guilty by a jury in June of 1970, and sentenced to life imprisonment—the jury declining to impose the death penalty.

In amplification of this summary, the complaint further alleges that the Eastern Airlines jet which was hijacked on February 25, 1969 while en route from Atlanta, Georgia, to Miami, Florida, was diverted to the Republic of Cuba. After plaintiff's indictment on March 10, 1969, a warrant for his arrest was issued and

a manhunt for plaintiff was begun. In April of 1969 plaintiff was issued a Cuban passport and placed aboard a flight to Czechoslovakia where he was to be given political asylum. In May of 1969, plaintiff went to the American Embassy in Prague to renounce his American citizenship where he was detained to face the pending charges in the United States. The complaint alleges that while under physical and mental coercion he was made to sign "voluntary repatriation" papers and while he was being escorted by the Embassy personnel to an automobile to take him to the airport, he struck one of the agents with his fist, grabbed the envelope with the airline ticket and the Cuban passport and escaped. Thereafter, plaintiff made his way to East Germany where he was found by United States agents on September 22, 1969 at a youth hostel in East Berlin. On September 23d he was taken to the United States Consulate where he was informed that he would be "returned to stand trial in the United States on charges of Air Piracy and Kidnapping".

The complaint then alleges that, because he refused to cooperate by signing a statement saying that he was the wanted person and "voluntary repatriation papers," he was physically abused by various representatives of the United States government and after considerable "brutal treatment" and while "in a seriously weakened condition" he agreed to sign an incriminating statement, submit to interrogation and sign the repatriation forms.

On September 24th, after having spent the night under house arrest, he was brought to the Consulate about noon and told that he was booked aboard a flight to the United States.

With respect to the defendant, Pan Am, the complaint then alleges that the defendant Lanier (the International Relations Officer of the Office of Public Safety, U. S. Department of State, assigned to the U. S. Mission in Berlin, Germany), "told the plaintiff that he

had to be searched again, that the Captain of the plane ordered it" and that he was then forced to remove all his clothes for a strip search. The plaintiff was also told that the Captain felt that the plaintiff should be given a mild tranquilizer to keep him from becoming "excited" during the flight and accordingly, plaintiff was injected with an unknown drug. Thereafter, plaintiff was taken to the airport where they were met by the Captain of the flight who advised them to "keep him in the back of the plane and away from the passengers and crew" and to keep him from getting off the plane "until we reach New York". The Captain is then further alleged to have asked plaintiff's escorts "whether they were armed, they replied 'yes', and he said that was 'good', but that he wanted 'no shooting' but, if necessary, to 'handcuff him' in the event of 'trouble'. The Captain is also alleged to have offered the escorts the service of a Pan Am Security Officer to accompany them or to meet them at the airport in New York, but the escorts advised that this was unnecessary.

The complaint then alleges that plaintiff was put aboard the aircraft and that he slept during almost the entire trip to New York.

Finally with respect to Pan Am, the complaint alleges that "the said defendants, Pan American World Airways, Inc., conspired in major aspects with the above named defendants to illegally return the plaintiff to this country."

In three paragraphs in the complaint denominated "Legal Claims" plaintiff alleges, with respect to Pan Am, that:

"Defendant Pan American World Airways assisted and aided in the following acts, or had full advance knowledge of same: that plaintiff was being carried irregularly from a foreign territory; had prior knowledge of the actions of the State and Justice Departments and advised them of the time of departure and estimated arrival time of the flight from West Berlin to New York; allowed Defendants to board the plane armed, in violation of 49 U.S.C. Section 1472(L); allowed and required the plaintiff to be under the influence of drugs, and to have been subjected to a humiliating strip and rectal search before embarkation; knew that plaintiff was traveling under fraudulent documents, and under illegal restraint and duress; and in all other ways, known and unknown, in furtherance of the conspiracy to illegally return plaintiff to this country.

\* \* \* \* \* \*

"By making the agreements or plans and by causing numerous acts to be done pursuant to the plans whereby the plaintiff was injured to his person and deprived of his Constitutional rights, the named defendants engaged in a conspiracy in violation of Title 42 U.S.C., Section 1985, to illegally return plaintiff to this country. And that through the use of their agents, whom they had direct control over, and was in continuous contact with, they subjected plaintiff to illegal surveillance, force, interrogation and detention.

"By failing or refusing to prevent the occurrence of the events described in this Complaint, although they knew the said events were about to occur, and although they had power to prevent their occurrence, defendants named herein violated 42 U.S.C. Section 1986. \* \* \* "

*Discussion*

■ With respect to the latter of such "Legal Claims", Section 1986 of Title 42, United States Code, provides for a claim for neglect in preventing a conspiracy to violate a persons civil rights in the following terms:

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in Section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed,

shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . ."

This Section, however, further provides for an explicit one year Statute of Limitations, as follows:

"But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."

It is clear that plaintiff's cause of action under Section 1986 of Title 42 of the United States Code accrued in September of 1969 and was time-barred under this Section in September of 1970.

■■■ Section 1985 of such Title provides for a claim for conspiracy to violate a said person's civil rights in the following terms:

"(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

Defendant, Pan Am, also indicates that plaintiff may, in addition, be seeking relief under Title 42, Section 1983, which provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Said defendant concedes that no express limitation period is provided under Title 42 with respect to Sections 1983 and 1985 of such Title, and that Section 1988 of such Title requires the courts to refer to the "statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held".

In addition, the courts have repeatedly held that where Congress has not enacted a statute of limitations governing a federal cause of action, a court should apply the forum's statute of limitations with respect to analogous types of actions. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *International Union, United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). This has also been true in cases arising under the Civil Rights Act. *O'Sullivan v. Felix,* 233 U.S. 318, 34 S. Ct. 596, 58 L.Ed. 980 (1914); *Romer v. Leary,* 425 F.2d 186 (2d Cir. 1970); *Ammlung v. City of Chester,* 494 F.2d 811 (3d Cir. 1974); *Almond v. Kent,* 459 F.2d 200 (4th Cir. 1972); *Beard v. Stephens,* 372 F.2d 685 (5th Cir. 1967); *Rinehart v. Locke,* 454 F.2d 313 (7th Cir. 1971).

With respect to claims based on deprivation of civil rights, the Courts in the Second Circuit have consistently held that the applicable limitation statute is that governing actions based upon a liability created by statute. *Swan v. Board of Higher Education of City of New York,* 319 F.2d 56 (2d Cir. 1963); *Bomar v. Keyes,* 162 F.2d 136 (2d Cir. 1947), *cert. den.,* 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947); *Laverne v. Corning,* 316 F.Supp. 629, 634 (S.D.N.Y.1970), *modified on other grounds,* 376

**20**

F.Supp. 836 (S.D.N.Y.1974), *aff'd as modified*, 522 F.2d 1144 (2d Cir. 1975); *Beyer v. Werner*, 299 F.Supp. 967 (E.D. N.Y.1969); *Montagna v. O'Hagan*, 402 F.Supp. 178 (E.D.N.Y.1975).

Section 214(2) of the New York CPLR provides in pertinent part as follows:

> "The following actions must be commenced within three years:
>
> \* . \* \* \* \* \*
>
> "2. an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215;"

Again in view of the fact that the last acts charged against Pan Am in support of the claimed conspiracy to violate plaintiff's civil rights occurred in September of 1969, it is clear that plaintiff's claims with respect thereto became time-barred in September of 1972.

Accordingly, insofar as plaintiff's allegations against Pan Am are based on alleged violations of his civil rights under the Federal Civil Rights laws, the same are barred by the applicable Statutes of Limitations and must be dismissed. In light of this conclusion the Court will not consider other questions pertaining to the reach of the Civil Rights Acts, such as whether actions may be maintained under the Acts against federal officials or those who act in concert with them.

█ Another possible basis for plaintiff's action is the Fourth Amendment. Under the holding of *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), violation of that Amendment by a federal agent acting under color of his authority gives rise to a claim for damages. If we assume without deciding that the Amendment also gives rise to a claim against private individuals or firms (like Pan Am) who cooperate with or aid and abet such violations, see *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), the Court must determine what limitations period applies in a *Bivens* action.

As indicated above, the proper response to an unspecified limitations period in a federal action is the application of the limitations period for analogous New York actions. Two possibilities suggest themselves: the Court could impose either the one year period generally applicable in intentional tort actions under CPLR § 215, or the three year period governing actions (such as those arising under the Civil Rights Act) based upon a liability created by statute, CPLR § 214; see *Jones v. Bales*, 58 F. R.D. 453 (N.D.Ga.1972), *aff'd*, 480 F.2d 805 (5th Cir. 1973). Since a judicial preference has been indicated for treating federal defendants in *Bivens* actions in the same way as state defendants in Civil Rights Act actions, see *e. g. Bivens v. Six Unknown Named Federal Narcotics Agents*, 456 F.2d 1339 (2d Cir. 1972), this Court believes that the three year period is more appropriate even though a *Bivens* action is not technically based upon a liability created by *statute*. But under either approach, plaintiff's suit against Pan Am is barred.

█ In his complaint plaintiff appears to claim that the defendant Pan Am is civilly liable for alleged violations of various federal criminal statutes, viz: the Federal Kidnapping Act, 18 U.S.C. Section 1201, and the Act pertaining to weapons or explosives aboard an aircraft, 49 U.S.C. Section 1472(*l*).

To the extent that any such liability may be said to be based upon any such statute, any claim with respect thereto would appear to be subject to the same limitations bar as the claims alleged under 42 U.S.C. Sections 1983 and 1985, *supra*, in that there are no federal limitations prescribed in and with respect to any such statutes in the United States Code. Alternatively, it could conceivably be proper to apply the one year limitations period for intentional torts. But application of that period would also lead to a determination that this action is barred.

In addition, while it is not necessary for the purposes of this decision to pass upon the question, it appears doubtful whether plaintiff's allegations against the defendant Pan Am state a claim upon which relief can be granted insofar as they may be predicated upon the foregoing federal criminal statutes. See *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81 (2d Cir. 1972); *Boruski v. Stewart*, 381 F.Supp. 529 (S.D.N.Y.1974); *Bass Angler Sportsman Society v. United Steel Corp.*, 324 F.Supp. 412 (N.D., M.D., and S.D. Ala.), *aff'd*, 447 F.2d 1304 (5th Cir. 1971).

This Court is mindful of its duty to dismiss *pro se* civil rights actions by prisoners only where such a course is clearly required by applicable law. But obviously a *pro se* plaintiff can no more maintain an action barred by the Statute of Limitations than can any other plaintiff. Plaintiff's situation has been accorded due consideration, and this Court has on plaintiff's behalf searched carefully but unsuccessfully for a theory to answer defendant's points of law. Under the circumstances the Court has no alternative but to dismiss the plaintiff's complaint against Pan Am, and the same hereby is dismissed.

So ordered.