**Charles ISELEY, et al.**

v.

**BUCKS COUNTY, et al.**

**Civ. A. No. 82–1802.**

United States District Court,
E.D. Pennsylvania.

Sept. 27, 1982.

162

Theodore Q. Thompson, Thompson, Hester & Buchanan, Ambler, Pa., for plaintiffs.

Peter S. Miller, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for defendants Buck County, Michael Kane and Richard Batezel.

Charles W. Johns, Philadelphia, Pa., for defendants Honorable Kenneth G. Biehn, Honorable Edward G. Biester, Jr., Honorable Isaac S. Garb, Leonard B. Sokolove.

Peter D. Delaney, White, Matthews & Delaney, Langhorne, Pa., for defendant Vincent L. Lattanzi.

Jack Sirott, Bristol, for defendant Peter H. Kostmayer.

## MEMORANDUM AND ORDER

GILES, District Judge.

■ Defendants move to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. Plaintiffs are Charles Iseley, Sr., ("Iseley, Sr.") a former member and Chairman of the Civil Service Commission of Bristol Township, Bucks County, Pennsylvania, and his son, Charles Iseley, Jr., ("Iseley, Jr."). They brought the underlying complaint seeking damages, a declaratory judgment and injunctive relief for asserted violations of 42 U.S.C. §§ 1981, 1983, 1985(1)–(3), 1986 and 1988. They claim deprivation of rights guaranteed under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.[1]

Plaintiffs allege that the defendants, individually and collectively, engaged in a vendetta against them based upon racial and personal animus. They also assert pendent state claims.[2]

■ Plaintiffs seek recovery from Judges Kenneth G. Biehn, Edward G. Biester, Jr., and Isaac S. Garb of the Court of Common Pleas, Bucks County, Pennsylvania; Leonard B. Sokolove, Solicitor for Bristol Township; Michael J. Kane, County District Attorney; Richard F. Batezel, County Detective; Bucks County as a political subdivision of the Commonwealth; John Doe Commissioners of Bristol Township and Unknown John and Jane Does, employees, agents, servants and/or officials of Bucks County;[3] Vincent L. Lattanzi; and Peter H. Kostmayer, a former United States Representative. Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1331(a) and 28 U.S.C. § 1343(1)–(4). For the reasons set forth herein, the motions to dismiss of defendants Biehn, Biester, Garb, Sokolove, Kane, and Kostmayer will be granted and plaintiffs' complaint as to them shall be dismissed with prejudice. As to defendants Bucks County, Batezel and Lattanzi, the motions to dismiss will also be granted.

1. It is not clear whether plaintiffs allege that the constitutional violations are the basis of his section 1983 claim or grounds for separate claims brought directly under the Constitution. However, defendants correctly assert that if plaintiffs' claims pursuant to the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments are the grounds for separate actions, they should be dismissed. Section 1983 was designed to afford plaintiffs a direct cause of action for constitutional violations on the part of governmental bodies and other state officials. To allow plaintiffs to maintain a cause of action directly under these amendments would be an exercise in redundancy. *Morrow v. Phillips,* et al., No. 81–5015, slip op. at 3 (E.D.Pa. June 22, 1982); *Shirey v. Bensalem Township,* 501 F.Supp. 1138, 1144 (E.D.Pa.1980), *appeal dismissed,* 663 F.2d 472 (3d Cir. 1981). Accordingly, plaintiffs' constitutional claims are dismissed.

2. They claim that the acts and conduct of defendants constitute intimidation, intentional infliction of emotional distress, false arrest, false imprisonment, malicious prosecution, abuse of process, gross and ordinary negligence, and invasion of privacy.

3. As a general rule, the use of "John Doe" to identify a defendant is not favored. *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980). The plaintiff need not be given an opportunity to identify these defendants through discovery if it is clear that the complaint would be dismissed on other grounds. *Id.* (Citing *Gordon v. Leeke,* 574 F.2d 1147, 1152 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Here, our holding is based on plaintiffs' lack of specificity in pleading which is fatal to their claim whether or not they may name "John Doe" defendants. *See Shirey v. Bensalem Township,* 501 F.Supp. 1138, 1144 n. 5 (E.D.Pa.1980), *appeal dismissed,* 663 F.2d 472 (3d Cir. 1981).

However, the complaint will be dismissed without prejudice with leave to amend.

Plaintiffs' claims arise out of a factual background which can best be summarized as four distinct events occurring between February, 1979 and June, 1981. First, while Iseley, Sr. was serving as Chairman of the Civil Service Commission of Bristol Township ("Commission") he instituted and conducted hearings to determine whether an undercover police officer should be discharged for illegal use of drugs. He asserts that defendant Sokolove, in his capacity as Solicitor for Bristol Township,[4] obstructed these hearings by filing dilatory pleadings in the Court of Common Pleas, and by instructing certain witnesses not to appear and testify at the scheduled hearings.

Second, Iseley, Sr. claims that Detective Batezel threatened his life in April, 1980 following a confrontation arising from his Commission's investigation into purported police involvement in local drug trafficking. He claims that District Attorney Kane thereafter failed to bring any criminal charges against Batezel. There is no allegation that a private criminal complaint was filed by Iseley, Sr.

Third, Iseley, Sr. was Director of the Lower Bucks Human Resources and Development Center, a half-way house for delinquent boys. Because of certain activities in connection with this position, he was charged with, and subsequently convicted of, forgery, tampering with public records, theft by deception, unsworn falsification to authorities, and securing execution of documents by deception.[5] He asserts that Judge Biester, who presided over his criminal trial, and Judge Garb, who made the case assignment, acted in excess of their jurisdiction and abused their authority by not recusing themselves from any involvement in his trial. Iseley, Sr. asserts that recusal was required since Judges Biester and Biehn, when they were formerly Attorney General for the Commonwealth of Pennsylvania and District Attorney of Bucks County, respec-

tively, had received formal complaints from him about drug trafficking in his community and had taken no action. Allegedly, on or about February 1, 1979, Iseley, Sr. made formal complaints concerning the conduct and activities of Biehn, as district attorney, presumably, relating to Biehn's investigation, or alleged lack thereof, into drug trafficking in the county. Iseley, Sr. asserts that Biester, as Attorney General, received the complaints but took no action. Iseley, Sr. also alleges that he later made complaints about Biester, as Attorney General, similar to those he made against Biehn as District Attorney. He further asserts that in 1979 Biester and Garb were members of the Pennsylvania Commission on Crime and Delinquency which provided funds through grants for the operation of the Lower Bucks Human Resources and Development Center. Accordingly, Iseley, Sr. asserts that Biehn, Biester and Garb should have recused themselves from all involvement in his criminal trial, however, tangential.

In connection with the criminal charges against him, Iseley, Sr. further alleges that defendants Lattanzi and Kostmayer, provided false and misleading investigatory statements and trial testimony which led to his prosecution and criminal conviction on November 19, 1980. Allegedly, despite testimony by a witness at trial that he committed the criminal acts and not Iseley, Sr., Judge Biester refused to dismiss the charges.

Finally, it is alleged that in June, 1981, Judge Biehn, was assigned by Judge Garb to hear a juvenile case involving Iseley, Jr. Biehn did not recuse himself. Plaintiffs allege that defendants Biehn and Garb should have recused themselves from any involvement in Iseley, Jr.'s trial, due to their involvement in the events set forth above.

Defendants have asserted various immunity defenses as well as lack of specificity in

---

4. Sokolove is now a judge of the Court of Common Pleas of Bucks County.

5. An appeal from this conviction is pending before the Superior Court of Pennsylvania. See Complaint, ¶ 36.

pleading.[6] For purposes of clarity, defendants will be discussed according to the defenses which they have raised.

## I. IMMUNITIES

### A. *Judicial Immunity*

All the claims asserted against defendants Biehn, Biester, and Garb arise from actions undertaken in their capacity as judges of the Court of Common Pleas of Bucks County. These defendants properly assert that in this case, they are immune from suit for monetary damages under § 1983. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

■ The essential inquiry in determining whether such immunity attaches is whether at the time the judge took the challenged judicial action, he had jurisdiction over the subject matter before him. *Sparkman,* 435 U.S. at 356, 98 S.Ct. at 1104. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57, 98 S.Ct. at 1104–1105 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872). In *Bradley,* the Court illustrated lack of judicial jurisdiction through the following example: "[I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in clear absence of jurisdiction and would not be immune from liability for his action." *Id.* at 352.

■ It is clear that none of the judicial acts complained of were done "in the clear absence of all jurisdiction." Plaintiffs' averments relate solely to the actions of case assignments and presiding over their trials. Judges of the courts of common pleas have broad judicial powers including unlimited original jurisdiction of *all* actions and proceedings. Pa. Const. Art. V, § 5(b); 42 Pa. Const.Stat.Ann. § 931 (Purdon 1981);

*Calabrese v. Collier Township Municipal Authority,* 430 Pa. 289, 296, 240 A.2d 544, 548 (1968). The pleadings taken in the light most favorable to plaintiffs show that these judicial defendants were acting within their jurisdiction.

■ Plaintiffs argue that the defendants' actions were not "judicial acts" and therefore outside their jurisdiction. Whether an act is a judicial act depends upon (1) whether it is a function normally performed by a judge and (2) whether the parties dealt with the judge in his judicial capacity. *Sparkman,* 435 U.S. at 361–62, 98 S.Ct. at 1107–1108. The actions alleged here, are all functions normally performed by state court trial judges. Further, it is clear that plaintiff dealt with the judges at all times in their judicial capacities. Pennsylvania law vested in Judges Biehn, Biester, and Garb the power to entertain and act upon the cases at issue. Under the controlling cases, they are immune from liability for damages under section 1983.

■ Even if Biehn, Biester, and Garb are immune from damage suits, plaintiffs assert that "judicial immunity was not designed to insulate the judiciary from all aspects of public accountability," *Dennis v. Sparks,* 449 U.S. 24, 31, 101 S.Ct. 183, 188, 66 L.Ed.2d 185 (1980), and that they are not immune from a suit for declaratory or injunctive relief. Without deciding whether state court judges are immune from civil rights suits for injunctive relief, I find that the allegations of the complaint do not support a claim for the relief requested. The power to grant injunctive relief against state court judges, "may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights...." *Holiday Inns of America, Inc. v. B & B Corp.,* 409 F.2d 614, 618 (3d Cir. 1969). *Accord, O'Shea v. Littleton,* 414 U.S. 488, 499–501, 94 S.Ct. 669, 677–678, 38

---

6. For those defendants as to whom this court finds that immunity attaches, it does not decide the issue of whether plaintiff has alleged a

deprivation of constitutional rights sufficient to meet the threshold specificity requirements of a civil rights action.

L.Ed.2d 674 (1974). The complaint fails to allege that any of the defendants did, or wrongfully failed to do, any act following the trial of Iseley, Jr., or have threatened to do, or wrongfully refrain from doing, any action in the future. Thus, there is presently no threat against which injunctive relief could properly issue. *See Raitport v. Provident National Bank,* 451 F.Supp. 522, 530 (E.D.Pa.1978).

 The plaintiff also seeks declaratory relief in some unspecified form. Whether declaratory relief should be granted in an appropriate case is committed to the court's sound discretion. *Bituminous Coal Operator's Ass'n., Inc. v. International Union, UMW,* 585 F.2d 586, 595–96 (3d Cir. 1978); *American Home Assurance Co. v. Liberty Mutual Insurance Co.,* 475 F.Supp. 1169 (E.D.Pa.1979). In determining the appropriateness of declaratory relief, I must consider whether it will resolve an uncertainty giving rise to a controversy, the convenience of the parties, the public interest and the availability of other remedies. *Bituminous Coal,* 585 F.2d at 596–97. Here, the prayer for declaratory relief is no more than a predicate implicit to plaintiff's request for damages. There is no uncertainty of obligation between plaintiff and defendants that mandates a declaration of their legal relations. There is simply no basis for declaratory relief, even assuming that such relief is not barred by the doctrine of judicial immunity. *Cf. Hansen v. Ahlgrimm,* 520 F.2d 768, 770 (7th Cir. 1975) (declaratory relief denied where it was predicate to damage relief and damage claims were barred by judicial immunity).

### B. *Prosecutorial Immunity*

 Sokolove and Kane have in common claims against them concerning actions taken in their capacity as government prosecutors. These defendants properly assert that prosecutors enjoy absolute immunity from damage suits growing out of their official duties. *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976); *Turack v. Guido,* 464 F.2d 535, 536 (3d Cir. 1972). However, like judicial immunity, prosecutorial immunity is not absolute. *Bauers v. Heisel,* 361 F.2d 581, 590 (3d Cir. 1966), *cert. denied,* 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). Prosecutors enjoy immunity only for activities intimately associated with the judicial phase of the criminal process. *Ross v. Meagan,* 638 F.2d 646, 648 (3d Cir. 1981) (citing *Imbler v. Pachtman,* 424 U.S. at 430, 96 S.Ct. at 994). In determining whether a prosecutor enjoys absolute immunity from civil liability, federal courts must apply a functional analysis to determine whether the prosecutor's acts fall within the bounds of "judicial" as opposed to "investigative or administrative duties." *Mancini v. Lester,* 630 F.2d 990, 993–94 (3d Cir. 1980); *Forsyth v. Kleindienst,* 599 F.2d 1203, 1212–16 (3d Cir. 1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). Thus, the question presented here is whether the defendant's activities are "judicial duties." *See Henderson v. Fisher,* 631 F.2d 1115, 1120 (3d Cir. 1980).

 Defendant Sokolove's filing of a Rule to Show Cause against the Commission to enjoin further investigative hearings and his alleged instruction to government witnesses not to testify at these hearings were tasks performed in his role as an advocate, and cannot be construed as investigative or administrative duties, *see Imbler,* 424 U.S. at 430 n. 32, 96 S.Ct. at 995 n. 32. Consequently, he is immune from suit, based upon these activities.

 As to Kane, the decision to approve or disapprove a private criminal complaint is squarely within the broader function of "initiating a prosecution" as defined by *Imbler.* Just as the prosecutor who initiates a criminal case requires protection from the defendant who transforms his resentment into a lawsuit, *Imbler,* 424 U.S. at 425, 96 S.Ct. at 992, so too the prosecutor who decides not to initiate a case requires protection from the complainant who may be blind to the factors which militate against initiating prosecution. *See Raitport,* 451 F.Supp. at 528 (citing *Turack,* 464 F.2d at 536) (district attorney immune from damage suit arising out of refusal to insti-

tute criminal proceedings against a third party). Thus, defendant Kane is immune from suit based upon his failure to prosecute.

### C. *Witness Immunity*

[18] Plaintiff has alleged that defendant Kostmayer provided false and/or misleading information which aided in his conviction on criminal charges. Although defendant Kostmayer has not raised the defense of immunity, it is clear that Kostmayer is absolutely immune from civil liability in § 1983 actions for testimony proffered in the course of plaintiff's criminal trial.

 At common law, a witness was absolutely protected from any suit arising from his testimony in a judicial proceeding. *Charles v. Wade,* 665 F.2d 661, 666 (5th Cir. 1982), *appeal filed.* A majority of federal courts, including the Third Circuit, have held that the policies that undergird the common law rule of absolute witness immunity apply with equal force in a § 1983 action and its counterpart, a *Bivens*-type claim.[7]

 Witness immunity is firmly grounded in public policy:

The function of witnesses is fundamental to the administration of justice. The court's judgment is based on their testimony and they are given every encouragement to make a full disclosure of all pertinent information within their knowledge.

*Brawer v. Horowitz,* 535 F.2d 830, 837 (3d Cir. 1976), (quoting 1 F. Harper and F. James, the Law of Torts, § 5.22 at 424).

*Accord, Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978).

 Procedural safeguards built into the judicial process are sufficient to control unconstitutional conduct of witnesses.[8] Accordingly, Kostmayer is absolutely immune from civil liability and the complaint must be dismissed as to him.[9]

 The same policies that favor granting immunity to judges, prosecutors, and witnesses, in § 1983 actions, require its extension to the other sections of the civil rights acts as well. *See Ross v. Meagan,* 638 F.2d 646, 649 n. 2 (3d Cir. 1980). Accordingly, the granting of immunity as to plaintiffs' § 1983 claims pertain, as well, to plaintiffs' claims under §§ 1981, 1985(1)–(3), and 1986, and these claims against defendants Biehn, Biester, Garb, Sokolove, Kane, and Kostmayer are also dismissed.

## II. LACK OF SPECIFICITY

### A. *Defendant Bucks County*

Plaintiffs allege that Bucks County violated their civil rights by negligently employing and supervising defendants Biehn, Biester, Sokolove, Kane, and Batezel in their respective capacities as state and/or judicial officers. No independent cause of action is alleged against Bucks County. The only theory of federal liability with respect to Bucks County, then, is under the doctrine of *respondeat superior.*

 Although municipalities may be sued directly under section 1983 where the alleged unconstitutional action implements

---

7. *Brawer v. Horowitz,* 535 F.2d 830, 836–37 (3d Cir. 1976); *Charles v. Wade,* 665 F.2d 661 (5th Cir. 1982); *Briscoe v. LaHue,* 663 F.2d 713, 720 (7th Cir. 1981), *cert. granted,* — U.S. —, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982); *Myers v. Bull,* 599 F.2d 863, 866 (8th Cir.), *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1979); *Blevins v. Ford,* 572 F.2d 1336, 1338 (9th Cir. 1978); *Burke v. Miller,* 580 F.2d 108, 110 (4th Cir. 1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979); *Bennett v. Passic,* 545 F.2d 1260, 1264 (10th Cir. 1976). *Contra, Briggs v. Goodwin,* 569 F.2d 10 (1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).

8. Rigorous cross-examination and the penalties of criminal prosecution for perjury at both state and federal levels provide substantial checks against false testimony by witnesses.

9. As further grounds for dismissal it may be argued that Kostmayer's testimony in state court was not action under color of state law for purposes of § 1983. *Brawer,* 535 F.2d at 836 n. 13 (citing *Pritt v. Johnson,* 264 F.Supp. 167, 170 (M.D.Pa.1967).

a policy or governmental custom which is so well settled as to have the force of law, *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), an action arising under this section must be dismissed where plaintiff fails to establish in his pleadings that the unconstitutional actions allegedly taken by the county's representatives were the product of official policy or custom. *Hassell v. City of Philadelphia,* 507 F.Supp. 814, 816 (E.D.Pa.1981). *See, e.g., Monell,* 436 U.S. at 690, 98 S.Ct. at 2035 (the touchstone of a section 1983 action against a municipality is an allegation that official policy is responsible for a deprivation of rights); *Pisatelli v. Metzger,* No. 81–1653 (E.D.Pa. filed March 29, 1982 (McGlynn, J.)); *Black v. Stephens,* 662 F.2d 181, 189 (3d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). Plaintiff must identify such policy or conduct specifically. *Ross,* 638 F.2d at 650; *Long v. Kistler,* 524 F.Supp. 225, 227 (E.D.Pa.1981). Where the broad and conclusory nature of plaintiff's allegations leave the court unable to ascertain the precise nature of the policy or custom which allegedly resulted in the deprivation of plaintiff's rights, the complaint must be dismissed. *Avacino v. Diass,* No. 81–3338 (E.D.Pa. filed March 10, 1982 (Pollak, J.)).

█ Here, the complaint fails to allege facts sufficient to establish that an official policy or custom of Bucks County resulted in defendant's actions. Since the Third Circuit has held that failure to permit amendment of a complaint dismissed *for want of* specific allegations constitutes an abuse of discretion, *Ross,* 638 F.2d at 650, plaintiff's claim against Bucks County will be dismissed without prejudice with leave to amend. However, plaintiff's attention is directed to Fed.R.Civ.P. 11, which requires a good faith belief that there is good ground to support the allegations of a complaint.

## B. *Defendants Lattanzi and Batezel*

Defendants Lattanzi and Batezel, whom plaintiff alleges provided false and/or misleading information which led to his criminal prosecution and conviction, argue that, as to them, the complaint should be dismissed for lack of specificity. In determining whether a complaint states a claim upon which relief can be granted, all well-pleaded factual allegations of the complaint, as opposed to legal conclusions that are alleged, must be taken as true. *Miree v. DeKalb,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Kugler v. Helfant,* 421 U.S. 117, 125 n. 5, 95 S.Ct. 1524, 1531 n. 5, 44 L.Ed.2d 15 (1975). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

█ Nevertheless, the Third Circuit has required complaints arising under federal civil rights statutes to be stated with greater particularity than is generally required under the liberal federal pleading rules in order to prevent frivolous civil rights suits. *Avacino v. Diass,* No. 81–3338 (E.D.Pa. filed March 10, 1982 (Pollak, J.)). (Citing *Kauffman v. Moss,* 420 F.2d 1270, 1275 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). Vague and conclusory allegations in a civil rights complaint will not survive a motion to dismiss. *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir. 1978).

█ Applying these standards to the proceeding *sub judice,* plaintiff's complaint as to defendants Lattanzi and Batezel must be dismissed for lack of specificity.

█ Plaintiff's complaint against Batezel alleges only that sometime during the month of April, 1980, he made a threat upon plaintiff's life as part of a conspiracy to deprive plaintiff of his constitutional rights. Plaintiff has not identified the constitutional right which is violated by the alleged threat. Further, although a conspiracy may be a basis for a section 1983 action, *Shirey v. Bensalem Township,* 501 F.Supp. at 1141, complaints containing only conclusory, vague, or general allegations of

a conspiracy to deprive a person of constitutional rights will be dismissed. *Id.* (citations omitted). There is no basis for concluding that there was any common plan of which Batezel was a part; in fact, there are no facts alleged to connect his activities with those of any of the other defendants. The complaint in the instant case appears analogous to that analyzed in *Carr v. Sharp,* 454 F.2d 271 (3d Cir. 1971) where the court found an allegation of a general conspiracy to inflict discrimination was unsupported by any substantial facts. *Id.* at 273 n. 6.

 Requisite specificity is also lacking as to defendant Lattanzi. At a minimum, a civil rights complaint must identify not only the defendants who acted, but also the time, place, and nature of their actions as well as the constitutionally protected right which has been violated, with sufficient specificity to give notice of the claims asserted. *Hall v. Pennsylvania State Police,* 570 F.2d at 89. *See Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922–23 (3d Cir. 1976). The content of the alleged false and/or misleading information provided by Lattanzi is not stated or even suggested in the complaint. Plaintiff does not state where the transaction took place, the time of its occurrence, nor any basis upon which this court may conclude that there is a link between Lattanzi's activities and deprivation of a constitutional right. Further, the allegation that Lattanzi's actions are part of a broader conspiracy is also unsupported by any factual allegations which indicate that he entered into an agreement, either express or tacit, with his co-defendants or that these activities relate to any common plan or design. As a whole, the allegations against Lattanzi do not state any facts upon which this court can weigh the substantiality of the claim. Accordingly, the motions to dismiss the complaint against Batezel and Lattanzi shall be granted.[10] However, to accomplish the dual objectives

of weeding out frivolous claims and keeping the federal courts open to legitimate civil rights claims, *see Rotolo,* 532 F.2d at 923, plaintiff shall be granted leave to file an amended complaint against defendants Batezel and Lattanzi.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of September, 1982, it is hereby ORDERED that:

For the reasons set forth in the accompanying memorandum opinion, plaintiffs' complaint is DISMISSED with prejudice as to the following defendants: The Honorable Kenneth G. Biehn, The Honorable Edward G. Biester, Jr., the Honorable Isaac S. Garb, Leonard B. Sokolove, Esquire and Michael J. Kane, Esquire and Peter H. Kostmayer. As to the following defendants, plaintiffs' complaint is DISMISSED without prejudice with leave to amend within twenty (20) days of the date of this order: Bucks County, Vincent L. Lattanzi and Richard F. Batezel.

---

10. Because plaintiff has failed to state a claim under sections 1983 and 1985, his claim under section 1986 must also fail by reason of the specific language of this section. *Marino v. Bowers,* 483 F.Supp. 765, 769 (E.D.Pa.1980), *aff'd en banc,* 657 F.2d 1363 (3d Cir. 1981). With respect to plaintiff's section 1988 claim,

this section creates no independent cause of action. *Marino,* 483 F.Supp. at 769. Therefore, Iseley has no cause of action under section 1988 except to the extent to which he has otherwise stated a claim upon which relief may be granted.