LeRoy HAYES, Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGA-TION, et al., Defendants.

No. 82 Civ. 0767 (WK).

United States District Court,
S.D. New York.

April 18, 1983.

LeRoy Hayes, pro se.

John S. Martin, Jr., U.S. Atty., S.D.N.Y. by Alan Nisselson, Asst. U.S. Atty., New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

A federal prisoner—serving a sentence for bank robbery and assault on federal agents—has brought a *Bivens* action against the Federal Bureau of Investigation (FBI), and several of its agents. The case is before us on cross-motions for summary judgment. Although the record raises issues of material fact which would preclude the granting of summary judgment were plaintiff's claim legally viable, the com-

plaint must, nonetheless, be dismissed. We find the claim against the FBI barred by soverign immunity, and the claim against the FBI agents barred by the applicable statute of limitations.

## BACKGROUND

On April 2, 1976 plaintiff was arrested in midtown Manhattan by several FBI agents on suspicion of bank robbery, placed into an FBI car, and brought to FBI headquarters.[1] There, defendants contend, the agents immediately summoned a nurse employed by the FBI to treat plaintiff for a superficial wound to which they had been alerted by a small amount of blood on his shirt. Defendants further contend that the nurse suggested to the agents that, if necessary, the U.S. Marshal's office should provide additional treatment. Plaintiff was soon arraigned in federal court. At the arraignment the agents advised the Magistrate that plaintiff should receive medical treatment, which treatment the Magistrate ordered. Plaintiff was then placed in the custody of the U.S. Marshal's office; it too was advised of the need for medical attention. During the entire time plaintiff was in FBI custody—defendants submit—he never made any request for medical care.

Plaintiff's version of these events is sharply at odds with the foregoing account. The plaintiff claims that on arrival at FBI headquarters he "was, intermittently, bleeding profusely." *See* Complaint ¶ 4. Plaintiff's affidavit of November 1, 1982

1. The parties' respective accounts differ sharply on the particulars of the arrest and of the events leading to it. Plaintiff contends that shortly before the arrest he "was waiting for a bus" in midtown Manhattan. "After waiting for about five minutes, [he] then crossed the street to hail a taxi. It was at this time that [he] was [arrested] ... When the agents [who had arrested him] identified themselves [he] did not display any violence or hostility towards them." Affidavit of November 1, 1982 at 1–2. Defendants, on the other hand, state that they were investigating the whereabouts of a man who had robbed three New York City banks. After observing the plaintiff—who matched the description of the bank robber—for several minutes, it appeared to them that he was about to rob a bank. At that point they decided to arrest him. When they did he began to struggle violently and had to be hit on the head with the barrel of a gun in a vain attempt to subdue him. Defendants claim that plaintiff even attempted to retrieve a gun from a briefcase, which attempt added to the violence of the struggle, it being known that it was the robber's *modus operandi* to carry a weapon in his briefcase. A gun was indeed removed—so defendants claim—from plaintiff's possession. The differences in recollection notwithstanding, plaintiff does not bring a claim based on the events surrounding the arrest. The complaint and all of plaintiff's other submissions focus on a claim based solely on the failure to provide medical attention after being transported to FBI headquarters. *See* text, below.

submitted in support of the motion for summary judgment states that, upon arrival at the FBI he was "covered with blood" and that he "asked the agents ... if [he] could be taken to the hospital," but to no avail. Thereafter, he was photographed, finger printed, and interrogated. During the interrogation he asked for medical treatment but neither received 'it from a nurse nor from anyone else. Plaintiff contends that after five hours at FBI headquarters he was driven to the offices of the U.S. Attorney, interviewed by an Assistant U.S. Attorney, and only then brought before a U.S. Magistrate. Plaintiff contends, finally, that the Magistrate ordered medical attention at the behest of a CJA attorney who

had advised the Magistrate that plaintiff "was in desperate need of medical attention." *Id.* at 3. Medical care was eventually provided at the Metropolitan Correctional Facility.

■ Invoking this Court's jurisdiction under 28 U.S.C. § 1331, plaintiff filed a *Bivens* action on February 8, 1982.[2] The complaint states, in relevant part, that "[b]y their deliberate [sic] indifference to plaintiff's injuries [the defendants] did deprive plaintiff of a civil right. The ... defendants were in direct violation of the Eighth Amendment to the Constitution of the United States of America." Complaint at ¶ 6.[3]

**2.** The complaint is stamped as received by the Pro Se Office on January 15, 1982, although the filing stamp is dated February 8, 1982. The gap between receipt of the complaint and its filing is of no moment.

**3.** In light of our rulings we need not precisely determine the nature of the constitutional violation alleged. For there to be a viable action under *Bivens,* plaintiff must, at least, establish a violation of constitutional rights, *Garcia v. United States* (5th Cir.1982) 666 F.2d 960, 962; *Williams v. Halperin* (S.D.N.Y.1973) 360 F.Supp. 554, 556–57, *and* that such violation is one which supports a recovery of damages. At the time of the events which are the basis of the complaint plaintiff had not been sentenced. It is therefore not at all clear that he has, in fact, pleaded a violation of the Eighth Amendment, never mind his explicit reference to it. Rather, plaintiff's version of the facts suggests a breach of Fifth Amendment (Due Process) rights. *See Putman v. Gerloff* (8th Cir.1981) 639 F.2d 415, 418–20. In any event, actions for damages under *Bivens* for violations of the Eighth Amendment or of the Due Process clause of the Fifth Amendment have now been recognized. *See Carlson v. Green* (1980) 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (Eighth Amendment); *Davis v. Passman* (1979) 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (Fifth Amendment). Accordingly, we can assume for the purpose of this motion that plaintiff's version establishes a constitutional violation compensable under *Bivens.*
Note also that we do not deem this a case brought under the Federal Tort Claims Act (FTCA). Plaintiff specifically disclaims an intention of suing thereunder. *See* Plaintiff's Memorandum of Law at 3; Plaintiff's Motion for Judgment on the Pleadings [docket entry # 8] at 2; *cf.* Complaint ¶ 6. Accordingly, the government's submissions for the proposition that plaintiff is not entitled to recover under

the FTCA are of no moment. Furthermore, in light of the foregoing and of the basis for our ruling, we need not consider whether the existence of a remedy under the FTCA for the violations alleged preempts a *Bivens* action under the rationale of *Carlson v. Green, supra,* 446 U.S. at 18, 100 S.Ct. at 1471. *See, e.g., Sonntag v. Dooley* (7th Cir.1981) 650 F.2d 904, 906–07; *Hernandez v. Lattimore* (2d Cir.1979) 612 F.2d 61, 66–68.
Neither do we read the complaint as advancing causes of action under the civil rights statutes —42 U.S.C. §§ 1983 and 1985(3). Against the FBI such actions would, in any event, be barred for the very same reason a *Bivens* action against it must fail—sovereign immunity. *See, e.g., District of Columbia v. Carter* (1973) 409 U.S. 418, 424–25, 93 S.Ct. 602, 606–07, 34 L.Ed.2d 613; *Hampton v. Hanrahan* (N.D.Ill. 1981) 522 F.Supp. 140, 147; *Ricca v. United States* (E.D.N.Y.1980) 488 F.Supp. 1317, 1325. There being no allegation that they acted under color of *state* law, an action under § 1983 would also fail if brought against the FBI agents. *See, e.g., Stonecipher v. Bray* (9th Cir. 1981) 653 F.2d 398, 401; *Powell v. Kopman* (S.D.N.Y.1981) 511 F.Supp. 700, 703–04; *Gonzalez v. Leonard* (D.Conn.1980) 497 F.Supp. 1058, 1073, n. 67; *Morpurgo v. Board of Higher Education* (S.D.N.Y.1976) 423 F.Supp. 704, 713, n. 18. As concerns an action under § 1985(3), it is not altogether clear that such action may, in fact, be brought against federal officials. *Compare Seibert v. Baptist* (5th Cir.1979) 594 F.2d 423, 429 (federal officials may not be reached by § 1985) *and Lofland v. Meyers* (S.D.N.Y.1977) 442 F.Supp. 955, 957 (same) *with Peck v. United States* (S.D.N.Y.1979) 470 F.Supp. 1003, 1008–12 (contra) *and Alvarez v. Wilson* (N.D.Ill.1977) 431 F.Supp. 136, 140–42 (same). However, even the cases allowing a § 1985(3) action to stand against federal officials are unanimous in that the relevant con-

## THE CLAIM AGAINST THE FBI

[2–5] "Regardless of whether or not the United States is a named defendant, a suit is considered to be against the sovereign if 'the judgment sought would expend itself on the public treasury or domain...'." *Clark v. United States* (7th Cir.1982) 691 F.2d 837, 839 (quoting *Land v. Dollar* (1947) 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209). *Accord Stafford v. Briggs* (1980) 444 U.S. 527, 542 n. 10, 100 S.Ct. 774, 784 n. 10, 63 L.Ed.2d 1; *Blackburn v. Goodwin* (2d Cir.1979) 608 F.2d 919, 923; *Doe v. Civiletti* (2d Cir.1980) 635 F.2d 88, 93 n. 13. Accordingly, the action against the FBI is a suit against the sovereign. Furthermore, "[i]t is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit'." *United States v. Mitchell* (1980) 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (quoting *United States v. Sherwood* (1941) 312 U.S. 584, 587–88, 61 S.Ct. 767, 770–71, 85 L.Ed. 1058). It is also clear that broad jurisdictional statutes like 28 U.S.C. § 1331 do not operate—in and of themselves—as waivers of sovereign immunity. *See Carelli v. Internal Revenue Service* (6th Cir.1982) 668 F.2d 902, 904; *Doe v. Civiletti, supra,* 635 F.2d at 94. The plaintiff, therefore, must look beyond the jurisdictional provision—to the statute which supplies the substantive basis of his claim—for a waiver of sovereign immunity. *United States v. Mitchell, supra,* 445 U.S. at 538, 100 S.Ct. at 1351. In a *Bivens* action it is, of course, the Constitution which provides the substantive basis of the claim. It is well established, however, that "[t]he Constitution does not waive the Government's sovereign immunity in a suit for damages," *Garcia v. United States* (5th Cir.1982) 666 F.2d 960, 966 (citing cases), and, therefore, that a *Bivens* claim against the Government must fail. *See, e.g., Contemporary Mission, Inc. v. U.S. Postal Service* (2d Cir.1981) 648 F.2d 97, 104, n. 9; *Leonhard v. United States* (2d Cir.1980) 633 F.2d 599, 618 n. 27; *Boyce v. United States* (E.D.N.Y.1981) 523 F.Supp. 1012, 1016; *Hampton v. Hanrahan* (N.D.Ill. 1981) 522 F.Supp. 140, 147–48; *Ricca v. United States* (E.D.N.Y.1980) 488 F.Supp. 1317, 1325; *Fayerweather v. Bell* (M.D.Pa. 1978) 447 F.Supp. 913, 916–17. *Cf. Birnbaum v. United States* (2d Cir.1978) 588 F.2d 319, 327–28.

## THE CLAIM AGAINST FBI AGENTS

The *Bivens* claim against the FBI agents as private individuals is, of course, not barred by sovereign immunity. *See, e.g., Sonntag v. Dooley* (7th Cir.1981) 650 F.2d 904; *Hampton v. Hanrahan, supra,* 522 F.Supp. at 148. We find it, however, to be precluded by the applicable statute of limitations.

Because "Congress did not establish a statute of limitations ... applicable to actions brought in federal court under [42 U.S.C.] § 1983 ... [federal courts have] repeatedly 'borrowed' the state law of limitations governing an analogous cause of action." *Board of Regents v. Tomanio*

---

spiracy must be motivated by "racial animus" to be actionable. *See, e.g., Peck v. United States, supra* 470 F.Supp. at 1012. *See also Griffin v. Breckenridge* (1971) 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338; *Dacey v. Dorsey* (2d Cir.1978) 568 F.2d 275, 277 (citing cases); *Powell v. Kopman, supra,* 511 F.Supp. at 704; *Peragine v. Maimone* (S.D. N.Y.1980) 504 F.Supp. 136, 138. We cannot discern any such animus from plaintiff's submissions. Indeed, the suggestion of an action under the civil rights statutes was raised by the defendants in their moving papers. Plaintiff— even in reply to those papers—has never pressed this issue. Furthermore, the conspiracy itself—a required element of an action under § 1985(3)—is not properly pleaded. The only suggestion of "conspiracy" appears at ¶ 5 of the Complaint where it is alleged "that [the] agents did wantonly conspired [sic] to cover up their actions." Such allegations could not possibly withstand a motion to dismiss. *See Contemporary Mission, Inc. v. U.S. Postal Service* (2d Cir.1981) 648 F.2d 97, 106–07; *Greene v. Brown* (E.D.N.Y.1982) 535 F.Supp. 1096, 1099; *Morpurgo v. Board of Higher Education, supra,* 423 F.Supp. at 713–714. In light of the foregoing, we decline to allow plaintiff—as we would, generally, in *pro se* cases, *see Gillespie v. Civiletti* (9th Cir.1980) 629 F.2d 637, 641 (allowing an action under § 1985 against federal agents) —to replead in regard to a § 1985(3) action against the individual FBI agents.

(1980) 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440. *See also Johnson v. Railway Express Agency* (1975) 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (actions under § 1981) (citing cases). Courts have also looked to state statutes when attempting to fix the limitations period for *Bivens* actions. *See Regan v. Sullivan* (2d Cir.1977) 557 F.2d 300, 303; *Sobel v. Yeshiva University* (S.D.N.Y.1979) 477 F.Supp. 1161, 1169–70.

Our Court of Appeals has not yet selected a specific statute of limitations for *Bivens* cases. *Pauk v. Board of Trustees of the City University* (2d Cir.1981) 654 F.2d 856, 862, *cert. denied* (1982) 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866; *Leonhard v. United States, supra,* 633 F.2d at 615; *Polk v. Lewis* (S.D.N.Y.1980) 499 F.Supp. 302, 303, n. 3. In *Regan v. Sullivan, supra,* it limited, however, the choice of applicable state analogue to the following alternative: either the three-year limit of C.P.L.R. § 214(2) (limitation for recovery upon a statute) or the six-year limit of C.P.L.R. § 213(1) ("fall-back" provision for actions which have no prescribed statute of limitations). *Id.* at 307.

■ The facts in *Regan* did not compel a choice between the foregoing provisions— the action at issue was time-barred under either one. That is not the case here: on February 8, 1982—when the case was filed—more than three, but fewer than six, years had elapsed from the time of accrual.[4] We find C.P.L.R. § 214(2), with its three-year limitation, to be the applicable analogue and, therefore, that the action against the individual FBI agents is stale.

■ In making the choice left open by *Regan* we are confronted with a remarkable absence of District Court precedent precisely on point. However, we have been given substantial guidance by the welter of case law dealing with the statute of limitations for § 1983 actions. It is, by now, axiomatic that "the appropriate statute of limitations period for § 1983 actions brought in New York [federal courts] is C.P.L.R. § 214(2), which specifies a three-year limitations period for actions to recover upon a liability created or imposed by statute." *Pauk v. Board of Trustees of the City University, supra,* 654 F.2d at 861.[5] To be sure, the Court of Appeals has never squarely held the Federal Constitution to be a "statute" within the meaning of C.P.L.R. § 214(2). It has, however, strongly endorsed that view in dictum. *Id.* at 865. *See also DeMalherbe v. International Union of Elevator Constructors* (N.D.Cal.1978) 449 F.Supp. 1335, 1350; *Fielder v. Moore* (W.D. N.C.1976) 423 F.Supp. 62, 63; *Ervin v. Lanier* (E.D.N.Y.1975) 404 F.Supp. 15, 20. As we are not writing on a clean slate but are merely making the limited choice left open by *Regan,* such endorsement would suffice as a basis for our decision. There are further grounds, however, for a holding that the limitation of C.P.L.R. § 214(2) should apply to *Bivens* actions.

In reaffirming the view that C.P.L.R. § 214(2)—rather than other provisions, particularly C.P.L.R. § 213(1)—is the appropriate limitation for § 1983 actions, the Court of Appeals summarized its thorough analysis of New York law in terms that are equally applicable to claims brought under *Bivens.* It noted:

---

4. It is well established that in a § 1983 claim "federal law determines when the claim accrues." *Barrett v. United States* (2d Cir.1982) 689 F.2d 324, 333. We see no reason to depart from this rule in the context of a *Bivens* action. Furthermore, under federal law a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Id.* (citing cases). Accordingly, the present claim accrued on April 2, 1976—the day of the incidents on which the complaint is based. The complaint was filed approximately five years and ten months thereafter.

5. Cases consistent with *Pauk* are legion. *See, e.g., Barrett v. United States, supra,* 689 F.2d at 333; *Thompson v. Binghampton Housing Authority* (N.D.N.Y.1982) 546 F.Supp. 1158, 1163, n. 2; *Whitmore v. City of New York* (E.D.N.Y. 1982) 541 F.Supp. 564, 565. Furthermore, it is clear that the limitation applies to civil rights cases generally, not just to actions brought under § 1983. *See, e.g., Staples v. Avis Rent-a-Car System* (W.D.N.Y.1982) 537 F.Supp. 1215, 1218 (§ 1981); *Rios v. Marshall* (S.D.N.Y.1981) 530 F.Supp. 351, 364 (§§ 1981, 1983, 1985); *Munshi v. New York University* (S.D.N.Y.1981) 528 F.Supp. 1088, 1091–92 (§§ 1981, 1983).

New York's highest court has characterized § 214(2) as applicable to "actions for wrongs not recognized in the common or decisional law." [Citations omitted.] While some § 1983 claims have counterparts in actions at common law, the *constitutional tort* remedied by § 1983 is "significantly different from" state torts [citations omitted].... A § 1983 claim *founded on the Constitution,* even if not within the category of claims to which § 214(2) precisely applies as a matter of state law, is sufficiently analogous to such claims to make the limitations period of § 214(2) appropriate as a matter of *federal law. Pauk, supra,* 654 F.2d at 866 (emphasis added).

As a matter of federal law we also note that a three-year limitation has been held sufficient to satisfy the "broad remedial purposes of § 1983." *Id.* at 862. The selfsame limitation should suffice as well to satisfy *Bivens'* similar remedial objectives. *See Bivens v. Six Unknown Federal Narcotics Agents* (1971) 403 U.S. 388, 396–97, 91 S.Ct. 1999, 2004–05, 29 L.Ed.2d 619. Furthermore, in *Butz v. Economou* (1978) 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895, the Supreme Court stated that "there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by *Bivens* than is accorded state officials when sued for the *identical violation* under § 1983." *Id.* at 500, 98 S.Ct. at 2907 (emphasis added). *See also Barker v. Norman* (5th Cir.1981) 651 F.2d 1107, 1122; *Mark v. Groff* (9th Cir.1975) 521 F.2d 1376, 1380; *Iseley v. Bucks County* (E.D.Pa.1982) 549 F.Supp. 160, 167. Nor is there, we believe, a reason to subject FBI agents to a lower degree of "immunity" (*i.e.,* such protection as is afforded by a statute of limitations) than that enjoyed by state police officers when sued for "the identical violation" under 1983. Thus, a three-year (rather than six-year) statute of limitations for *Bivens* actions would not raise the understandable "disapproval of selecting different limitations periods for different classes of defendants," *Pauk, supra,* 654 F.2d at 862, when sued on essentially similar causes of action.

We hold, therefore, that a three-year statute of limitations applies to *Bivens* actions in New York federal courts. *Accord Ervin v. Lanier, supra,* 404 F.Supp. 15, 20 (dictum). In so holding we do no more than to follow—as the Court of Appeals has stated in a different context—"the general trend in the appellate courts to incorporate 1983 law into *Bivens* suits." *Ellis v. Blum* (2d Cir.1981) 643 F.2d 68, 84.

## CONCLUSION

We dismiss the complaint against the FBI for lack of jurisdiction on grounds of sovereign immunity. The complaint against the individual FBI agents is dismissed as stale. Let the Clerk enter judgment dismissing the complaint, and let this case be closed on our docket.

SO ORDERED.