**Marian BARNES, Plaintiff-Appellant Cross-Appellee,**

v.

**CALLAGHAN & COMPANY, Defendant-Appellee Cross-Appellant.**

**Nos. 76–1654—76–1656.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1977.

Decided July 29, 1977.

Sidney Z. Karasik, John F. Skeffington, Michael A. Kreloff, Chicago, Ill., for Callaghan.

Jason E. Bellows, Carole K. Bellows, Chicago, Ill., for Barnes.

Before CUMMINGS and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

Four days after the commencement of trial, pursuant to prior leave, plaintiff filed her four-count Third Amended Complaint.[1] Count One was brought under Section 703(a)(1) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–2(a)(1) ). Plaintiff, a female resident of Des Plaines, Illinois, alleged that on September 25, 1972, she was discharged as head of its Editorial Department by defendant publisher of law books. She claimed that she was discharged and otherwise discriminated against because of sex and that she was succeeded by a male. She filed a timely charge with the Equal Employment Opportunity Commission on October 4, 1972. That agency issued her a notice of right-to-sue letter on April 13, 1973. Plaintiff asserted that after she filed her EEOC charge, defendant retaliated and harassed and intimidated her. In Count One she sought appropriate injunctive relief and reinstatement with back pay, plus $10,000 in punitive damages, costs and attorney's fees.[2]

Count Four was a pendent claim for slander and asserted that on September 26, 1972, Rae Smith, defendant's executive vice president, made the following slanderous statements to her former co-employees (including Richard Young and Stephen Hill):

"Marian Barnes was terminated because she was a non-communicator."

"Marian Barnes was terminated because she failed to communicate."

Count Four also alleged that on December 14, 1972, Michael Cudahy, defendant's president, made the following slanderous statements to Roger Sekara, the personnel director of Baxter Laboratories, concerning plaintiff's abilities as an employee of defendant:

"That we had to let Marian Barnes go because in our opinion her managing abilities were not keeping up with what we needed."

"That Marian Barnes had been managing our editorial department and the demands of that position had gotten beyond her."

"That Marian Barnes was not communicating company policy to people."

"That Marian Barnes said management was a bunch of bums."

"That Marian Barnes was attempting to isolate people from Mr. Cudahy."

After asserting that malice was the gist of Count Four, plaintiff sought $560,000 in damages plus costs and attorneys' fees and an additional $100,000 in punitive damages.

In a memorandum opinion of April 30, 1975, Judge Flaum adhered to a prior ruling by then District Judge Tone, to whom the case had been originally assigned, holding that the civil rights count could not be maintained as a class suit. Citing *Van Hoomissen v. Xerox Corporation*, 368 F.Supp. 829 (N.D.Cal.1973), Judge Flaum also held that punitive damages could not be awarded under Count One. In the same order, he decided that the slander action contained in Count Four was not barred by the one-year Illinois statute of limitations (1975 Ill.Rev.Stats. Ch. 83, § 14) even though the Count was not filed until March 25, 1975, long beyond the limitations period, because the "gravamen of the original com-

---

[*] Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

[1] The original complaint was filed on April 23, 1973, the First Amended Complaint on January 27, 1975, the Second Amended Complaint on March 25, 1975, and the Third Amended Complaint on March 19, 1976, after proofs were closed and submission of the slander case to the jury.

[2] Prior to trial, plaintiff voluntarily dismissed Counts Two and Three of her final complaint based on breaches of written and oral employment contracts. (Tr. 59.)

plaint was clearly the injury to plaintiff's reputation and employment opportunity occasioned by the alleged malicious conduct of the defendant."

Judge Grady, to whom the case was subsequently transferred, simultaneously held a bench trial of the sex discrimination case and a jury trial of the slander case. The jury awarded plaintiff $35,000 compensatory damages and $10,000 exemplary damages on the slander count, and the district judge found in favor of defendant on the bench trial of the sex discrimination count. We reverse the slander judgment and affirm the Civil Rights Act judgment.

### The Illinois Statute of Limitations Bars Recovery for Slander

■ We need not consider the merits of Count Four, the slander count, because of the bar of the one-year Illinois statute of limitations.[3] The slanderous statements purportedly occurred on September 26, 1972 and December 14, 1972. However, malice was not attributed to defendants until the January 27, 1975, First Amended Complaint, and the first time a slander count as such was alleged was in Count Four of plaintiff's March 25, 1975, Second Amended Complaint. This was more than two years after the allegedly slanderous statements.

Plaintiff can take no comfort from paragraph 8 of Count II of the original complaint, drafted by earlier counsel, because that count (as amended) was voluntarily dismissed by her during the trial. Moreover, Count II was plainly for breach of a year-to-year employment contract and only casually mentioned in paragraph 8, as one aspect of the damage resulting to plaintiff from the breach, that plaintiff's discharge injured her professional reputation. The alleged defamation injury which went to the jury concerned statements made subsequent to plaintiff's dismissal. But paragraph 8 speaks only to the dismissal itself; it intimates neither the fact nor content of any subsequent defamatory statements. Count II was entirely devoid of any allegations of slander as a cause of action as distinguished from allegations of impairment of reputation as part of damages for which a remedy was sought under a contract action.

■ Under Illinois law,[4] the slander allegations contained in Count Four of the Second and Third Amended Complaints do not relate back to the filing of the original complaint but are regarded as a new cause of action. *Millsaps v. Bankers Life Company*, 35 Ill.App.3d 735, 342 N.E.2d 329 (1976); *Colucci v. Chicago Crime Commission*, 31 Ill.App.3d 802, 334 N.E.2d 461 (1975); *Larkin v. Gerhardt*, 21 Ill.App.2d 122, 157 N.E.2d 426 (1959) (abst. op.). We cannot agree with the district judge that the gravamen of the original complaint "was clearly the injury to plaintiff's reputation * * *" (Plaintiff's App. 3). Instead, Count I of that April 23, 1973, initial pleading was a civil rights action and Count II (the only other count) was for breach of contract. Under Illinois law, a well-pleaded slander action requires allegations of malice, *Judge v. Rockford Memorial Hospital*,

---

**3.** The statute of limitations defense was raised in defendant's April 8, 1975, motion to strike and dismiss certain portions of the Second Amended Complaint. Since the district court overruled this defense in its order of April 30, 1975, the defendant renewed it in its May 27, 1975, Answer to the Second Amended Complaint. When plaintiff was given leave to file her Third Amended Complaint, principally to date and summarize the allegedly slanderous statements, defense counsel made a continuing objection because of the statute of limitations (Tr. 42–43). The limitations defense was not waived by not filing a mid-trial Answer, for it had already been thrice raised and was renewed in defendant's March 26, 1976, post-trial motion for judgment notwithstanding the verdict, which was denied three days later.

Because the limitations defense is properly before us, we need not decide if the defendant's statements were protected either by the Illinois innocent construction rule (*John v. Tribune Co.*, 24 Ill.2d 437, 181 N.E.2d 105 (1962)) or by an employer's qualified privilege. Nor need we pass on defendant's remaining arguments that the jury was improperly instructed or that its verdict was against the manifest weight of the evidence.

**4.** Illinois law governs the sufficiency of the defamation claim. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789.

17 Ill.App.2d 365, 150 N.E.2d 202 (1958), and of publication of the defamation to a third party. *Ginsburg v. Black*, 237 F.2d 790 (7th Cir. 1956), certiorari denied, 353 U.S. 911, 77 S.Ct. 669, 1 L.Ed.2d 665; *Libert v. Turzynski*, 129 Ill.App.2d 146, 262 N.E.2d 741 (1970). Neither the Title VII nor contract counts of the original complaint mention either malice or publication. An allegation of malice of any kind did not appear until the first amended complaint and no publication was detailed until the second amended complaint. Since there were no timely specific allegations of slanderous conduct,[5] the Illinois one-year statute of limitations for slander suit applies. 1975 Ill.Rev.Stats. Ch. 83, § 14.

█ Count Four of the Second and Third Amended Complaints setting forth allegations of slander cannot relate back under federal law to the date of the original pleading of April 23, 1973, for the slander claim did not arise "out of the conduct, transaction or occurrence set forth" in the original pleading as required by Rule 15(c) of the Federal Rules of Civil Procedure. Under the circumstances of this case, as we have demonstrated above, the amendments to the complaint did "introduce a new and different cause of action." *Russell v. New Amsterdam Cas. Co.*, 303 F.2d 674 (8th Cir. 1962). The original complaint was based only on the discharge of September 25, 1972, claiming in Count I that it violated Title VII of the Civil Rights Act of 1964 and in Count II that it violated plaintiff's employment contract. *Wiren v. Paramount Pictures*, 92 U.S.App.D.C. 347, 206 F.2d 465, 468 (1953); *Pendrell v. Chatham College*, 386 F.Supp. 341, 345–346 (W.D.Pa.1974). Also, the original complaint did not give defendant "such notice of the institution of the [slander] action that he * * * [would] not be prejudiced in maintaining his defense [thereto] on the merits" as required by Rule 15(c)(1). *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973), certiorari denied, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90. Therefore, Rule 15(c) does not save the slander count from the state time bar.

### *Plaintiff's Discharge Did Not Violate the Civil Rights Act*

At the close of the bench trial, Judge Grady announced his findings of fact and conclusions of law against the plaintiff on Count One (Plaintiff's App. 6–11). Those findings may be summarized as follows:

Plaintiff's fifteen years of experience with the defendant company was "almost an exemplar in equal employment opportunity for the sexes" (App. 6). In 1969, she was made head of the Editorial Department consisting of 19 men and one woman who were peers in her legal profession. As of 1969, fourteen of the male editors had been in the Editorial Department since 1967, many of them as far back as the 1950's and some even as far back as the 1940's. All were reasonably competent, and very few of them were discharged after plaintiff became head of the department. Despite the competence of the male editors, the important position as department chief was given to plaintiff in 1969. Indeed as far back as 1967, plaintiff was preferred over 18 males in the Editorial Department and named the top assistant to Gene Lowenthal, then head of that department. The foregoing statistics bespeak no sexual discrimination. The editors were all selected and promoted on the basis of merit.

---

5. On June 23, 1973, defendant filed a motion to dismiss which contained as an exhibit plaintiff's charge of retaliation to the EEOC:

"Since I filed a charge of discrimination with the Equal Employment Opportunity Commission, on October 4, 1972, the employer has refused and continues to refuse to give truthful and/or complete references to companies with whom I have sought employment. Several companies which expressed an interest in hiring me have lost interest after contacting Callaghan & Company and as a result I have been unable to find suitable employment."

Plaintiff maintains defendant was therefore on notice of her intention to bring slander claims. But under Illinois law a slander claim only accrues upon a specific allegation of publication with accompanying details. *Colucci v. Chicago Crime Commission*, 31 Ill.App.3d 802, 808–809, 334 N.E.2d 461 (1975).

Until 1970, plaintiff won the highest praise for her work. However, Jerome Pritz, a former subordinate of plaintiff, was promoted to Director of Publications at the end of 1970. One of his responsibilities was the supervision of plaintiff's Editorial Department. Plaintiff did not regard him as a person whose abilities were such as to command her respect. When plaintiff was terminated in September 1972, executive vice president Rae Smith, Pritz's immediate supervisor, blamed repeated breaches by plaintiff of the chain of communication within the defendant company as the cause of her dismissal. From a standpoint of what was reported to Smith by Pritz, Smith could have discharged plaintiff for general insubordination. Smith was a credible witness and did not strike Judge Grady as a vindictive person. Instead of discriminating against plaintiff on the basis of sex, defendant discharged her because Smith and president Michael Cudahy credited Pritz's reports that she repeatedly refused to follow his instructions in various respects. Because plaintiff was an employee at will, she could have been discharged with or without cause at any time from her initial employment in 1958 until her 1972 departure. However, defendant did not discharge her until "after it had what it believed to be ample and repeated cause" (App. 9).

When plaintiff's relationship with defendant was severed, her annual salary was $24,000 and higher than 14 of the 24 male managers in the defendant company. Only 10 of them earned more than plaintiff in September 1972. Therefore, plaintiff was not being discriminated against with regard to her salary. George Murphy replaced plaintiff and was hired at the same salary as plaintiff. He received a substantial increase within a year or so "but that may have also happened in the plaintiff's case had she not been terminated" (App. 9). Plaintiff's failure to be hired as an outside editor after her discharge had nothing to do with her sex but was because she was discharged for what the defendant regarded as good cause. If plaintiff had been discharged for incompetence rather than in-

subordination, the question of successor George Murphy's competence might be material. He was not insubordinate, so that his hiring does not demonstrate "any disparate treatment as between males and females" (App. 10).

Even though plaintiff may have been treated differently than her male predecessors and successors as to secretary and office furniture, she was not treated differently because she was a female but because of the personality conflict between her and Pritz. Plaintiff did not show that she was discriminated against with respect to the acquisition of shares of defendant's stock.

In sum, the district court found that plaintiff was not discharged because of her sex and that her sex played no part in any of the other acts of claimed discrimination. Accordingly, the court concluded that defendant did not violate Section 703(a)(1) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–2(a)(1) ). We affirm.

Based on a full record, the district judge found that plaintiff was fired for insubordination resulting from a personality conflict with her supervisor, Jerome Pritz. Her insubordination was based on testimony by Pritz that plaintiff repeatedly refused to follow his instructions. The court found that the defendant's top officers believed Pritz's reports and therefore discharged plaintiff. Since plaintiff failed to prove that she was terminated by defendant on a mere pretext, defendant's credited reasons for discharging her (breaches of the chain of command and general insubordination) effectively serve to rebut any *prima facie* case of plaintiff. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 803–804, 93 S.Ct. 1817, 36 L.Ed.2d 668.

The reasons for discharging plaintiff were founded on substantial evidence. Thus according to Pritz's reports (accepted by Cudahy and Smith), she failed to attend meetings scheduled by her supervisor Pritz, walked out of some of the meetings she did attend, sent memoranda directly to Rae Smith over Pritz's head and without his knowledge, and failed to follow Pritz's in-

structions with respect to making quarterly trips to the capitals of Michigan, Wisconsin and Illinois to maintain contact with defendant's sources of legislative material. Finally, plaintiff was given ample warning by Smith in February 1972 that she must cooperate to avoid termination, and Cudahy let her serve another seven months trial before she was discharged.

The district court's findings were largely based on Smith's testimony which was credited by the judge. Our review of the record satisfies us that his credibility findings were amply supported by the record and not clearly erroneous, so that we may not disturb his resolution of the Title VII count.

### *Leave to File Plaintiff's Bill of Costs Was Properly Denied*

■ A month after the district court's March 23, 1976, judgment for plaintiff on the slander count, her counsel sought to file a bill of costs in the amount of $1,202.54. Thereafter, the court ruled that the ten-day time limit provided in local civil Rule 45(a) affirmatively prevented it from granting plaintiff leave to file her bill of costs.[6] As the order noted, the requirement under the rule that the bill of costs must be filed by the prevailing party within ten days after judgment is mandatory unless a motion for an extension is filed within ten days of the judgment; otherwise the rule provides that costs other than those of the Clerk "shall be deemed waived." Since plaintiff's motion for leave to file the tardy bill of costs did not establish the existence of "excusable neglect" within Rule 6(b)(2) of the Federal Rules of Civil Procedure, the request for costs was properly denied. *Doran v. United States*, 475 F.2d 742, 743–744 (1st Cir. 1973).

The judgment for defendant on Count One is affirmed, and the judgment for plaintiff on Count Four is reversed.

---

**6.** The court did allow plaintiff to recover her $15 filing fee because Rule 45(a) provides an exception for fees of the Clerk pursuant to 28 U.S.C. § 1920.