663 P.2d 586

Charles A. **MERRICK** and Beatrice A. **Merrick**, his wife; and Tucson Memorial Parks, Inc., a corporation, Plaintiffs-Appellants,

v.

Keith **ROTTMAN**, George Menke, Richard O'Keefe, Arthur R. Adair, Lyle Ferguson, and Marian Lupu, as members of and constituting the Arizona State Board of Funeral Directors and Embalmers; and the Arizona State Board of Funeral Directors and Embalmers, an agency of the State of Arizona, Defendants-Appellees.

No. 1 CA–CIV 5585.

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 13, 1983.

Rehearing Denied Feb. 22, 1983.

Review Denied April 7, 1983.

John S. Schaper, Phoenix, for plaintiffs-appellants.

Robert K. Corbin, Atty. Gen. by Gary L. Sheets, Asst. Atty. Gen., Phoenix, for defendants-appellees.

## OPINION

JACOBSON, Presiding Judge.

This appeal presents the question of how far a regulatory state agency may go in seeking voluntary compliance with what it perceives to be a violation by one of its regulated members.

This action was instituted by appellants, Charles A. Merrick, his wife and Tucson Memorial Parks, Inc., (collectively referred to as Merrick) against the Arizona State Board of Funeral Directors and Embalmers, a state agency, and its members (the Board) seeking declaratory and injunctive relief. At issue was the validity of a "Funeral Establishment Cease and Desist Notification" issued by the Board and directed against Merrick. On cross-motions for summary judgment, the trial court granted judgment in favor of the Board, finding that the Board had implied power to issue the notification in question and no action would lie in Merrick's favor by reason of the Board's action. This appeal by Merrick followed.

The facts, for summary judgment purposes, are not in dispute. Charles Merrick is a licensed funeral director in charge of South Lawn Mortuary, a funeral establishment owned by Tucson Memorial Parks, Inc., located in Tucson, Arizona. The Board has statutory authority to regulate, supervise and to issue, suspend or revoke licenses of funeral directors and embalmers within this state. *See,* Title 32, chapter 12, "Funeral Directors and Embalmers," A.R.S. § 32–1301, *et seq.* There is no question that the activities of Merrick, as a funeral director and embalmer, fall within the regulatory powers of the Board.

In 1979, Merrick prepared and marketed a prearranged funeral plan which in the opinion of Merrick's counsel complied with the provisions of A.R.S. § 44–1721, *et seq.* (Title 44, chapter 11, Article 8, "Prearranged Funeral Plans"). Advertisements for this plan appeared in various Tucson newspapers, including the Arizona Daily Star and the Tucson Citizen.

On September 26, 1979, the secretary of the Board wrote Merrick, requesting a meeting with the Board to review the pre-arranged funeral plan and the advertising of that plan. On October 8, 1979, Merrick and his counsel met with the Board at which time the plan and advertisement were explained and discussed. At the conclusion of the meeting, the Board suggested that one provision be added to the plan and the Board voted unanimously to "close the matter". Following this meeting, counsel for the Board, in reviewing the material presented by Merrick at the meeting, concluded that because the advertising describing the plan stated that the cost of the funeral was fixed and that the consumer "will never pay additional money" while the plan itself allowed South Lawn to receive interest on the money paid into the plan, that in fact the purchase price of the funeral was variable in amount (depending upon the interest that would accrue between payment and death) and therefore the statement in the advertising of a "fixed price" was misleading. Counsel's conclusions were relayed to the Board.

Counsel's post meeting conclusions and advice to the Board were not disclosed to Merrick or his counsel. Merrick heard nothing further from the Board or its counsel until January 29, 1980, when Merrick, while attending a board meeting in Phoenix, Arizona, concerning proposed legislation, was confronted by a news reporter from the Arizona Republic who handed Merrick an unsigned copy of a letter dated January 28, 1980, from the Board addressed to Merrick and requested Merrick's comments.

The letter was entitled "Funeral Establishment Cease and Desist Notification." The letter in pertinent part stated:

It is the opinion of the Board that the price-guarantee language in the described advertisement is in violation of A.R.S. § 44–1521, *et seq.* (the Consumer Fraud Act), and of § 32–1383, subsection A, paragraph 5 of the Funeral Directors Act which provides that the Board may take disciplinary action against an establishment if it advertises "in an inaccurate, misleading or fraudulent manner."

\* \* \* \* \* \*

The positive assurance of South Lawn in its advertisement to guarantee a fixed price of future funerals *without* disclosure of the variance of the actual amount which the consumer ultimately pays is deemed to be inaccurate and misleading to the consumer. THEREFORE, SOUTH LAWN MORTUARY & CEMETERY IS HEREBY DIRECTED TO IMMEDIATELY CEASE AND DESIST IN THE PREPARATION, PUBLICATION, OR OTHER COMMUNICATION OF THESE ADVERTISEMENTS UNTIL THE DECEPTIVE LANGUAGE DESCRIBED ABOVE IS REMOVED OR MODIFIED. (Emphasis in original).

The letter went on to state that if a response to the notification was not received within 30 days, "the Board may elect to initiate formal disciplinary proceedings against your establishment."

At the meeting of the Board on January 29, 1980, the Board's counsel recommended to the Board that it "request the cooperation of Tucson Newspapers, Inc., by not publishing the above-mentioned advertisement in the future until the violations were corrected." Pursuant to this recommendation, letters were sent by the Board to the editor and publisher of the Arizona Daily Star and the Tucson Citizen which stated in pertinent part:

The Board has determined that the failure to disclose certain important pricing information in such advertising may be misleading to consumers in the Tucson area.

\* \* \* \* \* \*

We would appreciate the cooperation of your newspaper by not publishing these advertisements in the future. . . .

The following day, newspaper headlines appeared in the Tucson newspapers stating "Board Finds South Lawn Mortuary Ad is Deceptive," and "Mortuary Ordered to Alter Ads."

Prior to January 29, 1980, Merrick had received no notice of any action to be taken by the Board, although the printed agenda of the Board meeting contained an item entitled—"South Lawn."

On February 15, 1980, counsel for Merrick requested the Board to rescind its cease and desist notification and conduct an inquiry into the reasons for its issuance. On March 24, 1980, the Board declined to rescind its notification and having determined that Merrick had ceased its advertising (apparently some time in December, 1979, prior to the Board's letter of January 28, 1980), voted not to initiate any disciplinary action against Merrick. On March 24, 1980, this action was instituted in Superior Court which granted judgment to the Board on July 14, 1980.

Merrick's contentions on appeal may be summarized as follows:

(1) That the "Cease and Desist Notification" given to Merrick constituted an administrative injunction which the Board was without statutory authority to issue; and

(2) That the issuance of the "Notification" which impugned the integrity of Merrick and impaired its right to earn a living without notice and an opportunity to be heard, constituted a denial of due process.

The Board on the other hand, urges these contentions:

(1) That the "Notification" constituted merely a warning to Merrick to give it an opportunity to comply with the law before formal disciplinary proceedings were instituted;

(2) That since the Board must operate in compliance with the open meeting law, any adverse publicity connected with that warning is attributed to such compliance; and

(3) That the warning came as the result of an administrative investigation and therefore principles of due process do not apply.

Before turning to these various contentions, it is important to state that this appeal does not embrace the issue of whether or not the Merricks' prearranged funeral plan is in compliance with statutory requirements or whether or not the advertising describing that plan is deceptive, inaccurate or fraudulent. These issues have not been properly presented to the Board, nor were they presented to the trial court. The sole issue on appeal involves the validity of the "Cease and Desist Notification."

We first deal with the issue of whether the "notification" issued here is in the nature of an administrative injunction, as contended by Merrick, or is merely a "warning" with an opportunity to comply as contended by the Board. While the Board has taken great pains to try to convince this court that the notification was merely an informal warning to Merrick to "clean up its act" or suffer the consequences, the language of the notification itself belies this contention.

First, the notification contains the positive statement that the Board had determined that the advertising "is in violation of . . . the Consumer Fraud Act" and "is deemed to be inaccurate and misleading to the consumer." This is immediately followed by the capitalized statement, "THEREFORE, SOUTH LAWN MORTUARY & CEMETERY IS HEREBY DIRECTED TO IMMEDIATELY CEASE AND DESIST" the perceived improper advertising. This is not a warning that action will be taken, but purely and simply an order to cease action. Any other reading of this notification would make this court less perceptive than the Tucson newspapers that saw it for what it was—an order of the Board enjoining the use of deceptive advertising.

We now turn to the question of whether the Board has statutory authority to issue such an order which is injunctive in nature.

The only statutory authority for the Board to seek injunctive relief against one of its regulated members is found in A.R.S. § 32–1369. This statute provides, however, that the Board must act through the county attorney or attorney general by filing an action in superior court seeking the injunc-

tive relief and provide to the parties sought to be enjoined all the due process safeguards such an action would entail. Admittedly, the Board did not exercise this statutory procedure in issuance of its injunctive order. Moreover, the Board admits it has no express legislative authority to issue the type of notification to cease and desist issued here, but argues that such action is justified for several reasons.

First the Board contends that it has the authority to affirmatively react to perceived violations of the law by reason of A.R.S. § 32–1305(A) which provides in part that:

> The Board shall administer this chapter, and see that its provisions and the rules and regulations of the board are complied with and impartially enforced....

We disagree that this statute authorized the action taken here. A.R.S. § 32–1305(A), is merely the Board's general grant of authority to administer the Funeral Directors & Embalmers Act and to enforce its provisions and the regulations of the Board. However, the act itself contains specific provisions as to how the act is to be enforced. The specific enforcement powers granted to the Board are, as previously indicated, to seek injunctive relief (A.R.S. § 32–1369); to act upon a complaint, grant a hearing and revoke certificates (A.R.S. §§ 32–1364 and 1365); and to seek criminal misdemeanor prosecution of specific violations. (A.R.S. § 32–1368). Given these specific enforcement powers, no additional powers may be implied. *Cox v. Pima Cty. Law Enforc. Merit Imp. Coun.,* 27 Ariz.App. 494, 556 P.2d 342 (1976).

Next, the Board contends that because it is underfunded by the legislature and consists of citizen members, the "informal handling" of regulatory infractions is necessary and "strongly worded notifications" are central and necessary to its regulatory function. In our opinion, this argument is misdirected. If the Board cannot legally carry out its functions because of lack of funds, it should seek additional funding from the legislature, not perform nonau-thorized acts. The concept that the power of an administrative agency increases proportionately to the amount of money it is underfunded is without legal basis.

The Board's ultimate contention is that it should be able to informally contact its regulated members, point out the errors of their ways, and seek voluntary compliance with its regulations without utilizing the cumbersome and expensive machinery of administrative complaint and hearing. Whether the Board, under the investigative powers granted by A.R.S. § 32–1364 may accomplish what the Board perceives to be a laudable purpose, by something less than formal action is not presented in this appeal. As this opinion holds, the Board's notification to cease and desist, was not an "informal warning," but rather was a formal act of the Board directed against one of its regulated members. That the Board knew its action against Merrick was a formal action of the Board is highlighted by the fact that steps were taken to conform to the open meeting law, which only requires that "legal action" of the Board be in compliance with that law. *See,* A.R.S. § 38–431.01.

What is particularly distressing in this case is the cavalier use by the Board of the open meeting law. Not only were attendants at that meeting given notification of the Board's action, steps were undertaken to inform the media who were not present, particularly in the community where Merrick did business. By this action, in the eyes of the public, Merrick was already damned. Merrick was then placed in the position of either ceasing the activity which gave rise to the notice or seeking a hearing before a board which had already adjudicated his guilt. Given this Hobson's choice, the option is obvious—Merrick ceases the practice.

Thus the board through the coercive effect of its notice accomplishes its purpose without the safeguards that the legislature has imposed for injunctive relief against its regulated members. While vigorous action for protection of the public by regulatory agencies is to be commended, such agencies

must keep in mind that their powers are regulatory in nature, not dictatorial.

We therefore hold, the Board having no implied powers to issue ex parte injunctive orders, the notification to cease and desist issued here is without statutory authority and therefore void.

Since Merrick has requested declaratory relief as to the validity of the notification in question and that relief may be granted without reaching the issue of whether Merrick's due process rights have been violated, we decline to rule on this latter issue.

Moreover, Merrick has requested injunctive relief to enjoin the Board from taking future action against it based upon what Merrick perceives to be the preconceived bias and prejudice of the Board. Since no further action by the Board is contemplated, this request for relief is, at the present time, premature.

The judgment of the trial court is reversed and the matter remanded with directions to enter judgment in favor of Merrick declaring the notification to cease and desist issued on January 28, 1980 against Merrick to be null and void.

BROOKS, J., concurs.

CONTRERAS, Chief Judge, specially concurring:

This case presents an extreme example of unlawful administrative overreaching which gives the administrative process a black eye and undermines the confidence of both the public and those being regulated. In our ever-increasing complex, technological, and specialized society, the use of administrative regulatory agencies is essential. However, as pointedly demonstrated in this case, such delegated power can, if allowed to go unchecked, be abused. The methodology which the Board used, along with its self-expressed justification, have been judicially censured by this court. Hopefully, other similarly situated state administrative agencies will heed what has been stated in this opinion and will not abuse the power which has been delegated to them.