KLEINSCHMIDT, P.J., and YALE McFATE, Judge (Retired), concur.

NOTE: The Honorable Yale McFate was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20.

673 P.2d 944

CHALLENGE, INC., a Nevada corporation, aka Challenge Academy, Inc., Defendant Counterclaimant-Appellant and Cross-Appellee,

v.

STATE of Arizona, ex rel. Robert K. CORBIN, Attorney General, Plaintiff Counterdefendant-Appellee and Cross-Appellant,

and

W. Mark Sendrow and Janet Gniadek, Counterdefendants-Appellees.

No. 1 CA–CIV 6002.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 20, 1983.

Reconsideration Denied Oct. 26, 1983.

Tucker & Blank, P.A., Tallahassee, Fla., and Lewis & Roca by Paul G. Ulrich, Phoenix, for Challenge, Inc.

Robert K. Corbin, Atty. Gen. by Patrick M. Murphy, Chief Counsel, Financial Fraud Div. and Thomas I. McClory, Asst. Atty. Gen., Phoenix, for the State of Arizona, W. Mark Sendrow and Janet Gniadek.

## OPINION

MEYERSON, Judge.

The Attorney General, on behalf of the State of Arizona, brought suit against Challenge, Inc., and other defendants not parties to this appeal, alleging that the marketing, promotion, and advertising of so-called motivational courses violated Arizona's Consumer Fraud Act, securities law, and anti-racketeering statutes. At the outset of the litigation, the state obtained a temporary restraining order (TRO) without notice which, among other things, enjoined Challenge's advertising. The circumstances surrounding the issuance of the TRO formed the primary basis for a counterclaim filed under 42 U.S.C.A. § 1983 by Challenge against the State of Arizona and two assistant attorneys general, W. Mark Sendrow and Janet Gniadek.

Challenge contended in its counterclaim that Sendrow's actions in obtaining and enforcing the TRO and Gniadek's actions in filing a prior "baseless" complaint, violated Challenge's civil rights. It is from the dismissal of its counterclaim that Challenge brings this appeal. The state has filed a cross-appeal in which it alleges that the trial court erred in not granting all of the attorneys' fees which it requested and in not assessing fees directly against Challenge's counsel. The facts necessary for disposition of this appeal will be stated throughout this opinion.

## I. LIABILITY OF THE STATE OF ARIZONA

Much of the parties' briefing has been devoted to a discussion of the United States Supreme Court opinion in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The state argues that the Court in *Quern* held that a state was not a "person" for the purpose of actions to redress the deprivation of civil rights filed under 42 U.S.C.A. § 1983. Challenge, on the other hand, argues that *Quern* stands for a more limited proposition—that 42 U.S.C.A. § 1983 does not abrogate state immunity under the eleventh amendment and that states can be sued under the statute by waiving immunity. The United States Supreme Court has not resolved this issue and there is respectable authority to support each party's contention. *Compare Irwin v. Calhoun,* 522 F.Supp. 576, 583–84 (D.Mass. 1981); *Marrapese v. Rhode Island,* 500

F.Supp. 1207 (D.R.I.1980) *with Provet v. New York,* 546 F.Supp. 492 (S.D.N.Y.1982); *State v. Green,* 633 P.2d 1381 (Alaska 1981). Because we believe that the allegations of the counterclaim are insufficient to support a claim against the state under any circumstances, we choose not to resolve this knotty question of federal law. We agree with the state's contention that Challenge has failed to allege any facts which would support a civil rights claim against the State of Arizona.

In *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court overruled prior decisions and held that a state's political subdivisions are "persons" within the meaning of 42 U.S.C.A. § 1983 and can be liable under the statute. The Court made clear, however, that governmental entities cannot be liable merely on a theory of *respondeat superior.*

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. at 2037. Although *Monell* involves the application of 42 U.S.C.A. § 1983 to local government agencies, in light of the Court's decision in *Quern,* we are convinced that the logic of *Monell* would apply in the case of a civil rights claim filed against a state.

██ The conduct which forms the essence of the counterclaim is the filing of an allegedly "baseless" complaint by Gniadek, Sendrow's conduct in obtaining the TRO without notice, and the "enforcement" of the TRO which restricted Challenge's advertising by a local television station. Challenge alleges no actions which were taken by these assistant attorneys general pursuant to any state policy, regulation, or statute. Absent any nexus between the conduct complained of in the counterclaim and

a state policy or statute, Challenge can have no claim against the State of Arizona.

For example, in *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), a suit by an indigent defendant against his public defender alleging inadequate representation, the Court held that no claim based on *respondeat superior* would lie against the attorney's public-agency employer. The Court noted that the plaintiff failed to allege any "policy" that arguably violated his constitutional rights and failed to allege the existence of any constitutionally impermissible "rule or procedure." *Id.* at 326, 102 S.Ct. at 454. And in *Miller v. Barry,* 698 F.2d 1259, 1261 (D.C. Cir.1983), the court held that the allegation that a police officer "was acting fully within the scope of his employment and pursuant to the policies" of the District of Columbia government, was not specific enough to withstand dismissal. The court found that the complaint failed to allege that the constitutional harm was "caused" by the governmental policy or regulation. Because Challenge failed to allege that any "official policy" was the " 'moving force of the constitutional violation' " the trial judge was correct in dismissing the counterclaim as to the State of Arizona. *Polk County v. Dodson,* 454 U.S. at 326, 102 S.Ct. at 454 (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037).

## II. PROSECUTORIAL IMMUNITY

The trial judge concluded that Sendrow and Gniadek had absolute immunity and therefore could not be sued under 42 U.S. C.A. § 1983. Challenge has appealed that ruling and contends that because the assistant attorneys general had no absolute immunity their qualified immunity could only be determined after the taking of their depositions and the trial court was in error in refusing to allow those depositions to be taken. We agree that Sendrow and Gniadek had absolute immunity and therefore we need not discuss whether their depositions should have been taken. The counterclaim alleges three areas of misconduct. Each will be treated in turn.

The modern law of prosecutorial immunity has its genesis in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Court first noted:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges .... These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

*Id.* at 422–23, 96 S.Ct. at 991. The Court found that the "same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983." *Id.* at 424, 96 S.Ct. at 992. The Court held that a prosecutor enjoys absolute immunity where his or her activities are "intimately associated" with the judicial process.[1] *Id.* at 430, 96 S.Ct. at 995. The Court recognized that the considerations underlying absolute immunity for judicially-related conduct may be different where the prosecutor's responsibility casts him in the role of an administrator or investigative officer. *Id.* at n. 33. "In determining whether a prosecutor enjoys absolute immunity from civil liability ... courts must apply a functional analysis to determine whether the prosecutor's acts fall within the bounds of 'judicial' as opposed to 'investigative or administrative duties.'" *Iseley v. Bucks County,* 549 F.Supp. 160, 166 (E.D.Pa.1982). We now turn to the specific allegations contained in Challenge's counterclaim.

▆ First, Challenge contends that Gniadek filed a prior lawsuit against it which she knew or should have known contained false allegations regarding its qualifications to do business in Arizona and that this so-called "baseless" suit violated its

constitutional rights. Even assuming the truthfulness of Challenge's allegations (and it appears from the record that there is no merit to these allegations), "state prosecutors have absolute immunity from liability for their actions in initiating prosecutions." *Briscoe v. LaHue,* 103 S.Ct. at 1115. A decision to initiate a prosecution "unquestionably qualifies for immunity under *Imbler.*" *Siano v. Justices of Massachusetts,* 698 F.2d 52, 58 (1st Cir.1983); *see Mulligan v. Grace,* 136 Ariz. 483, 666 P.2d 1092 (1983).

▆ Next, Challenge alleges in its counterclaim that Sendrow misrepresented to the trial judge that he spoke with counsel for Challenge concerning the application for the TRO when he allegedly had not done so and that in a conversation with another representative of Challenge, Sendrow misrepresented the time of the hearing on the TRO. At a subsequent hearing, three days later, the circumstances surrounding the alleged misrepresentations were fully discussed before the trial judge who expressed the view that he was "satisfied ... that there was a misunderstanding." In any event, we find that the request for the TRO, the filing of an allegedly false affidavit in support of the request for the TRO, and the alleged misrepresentation to Challenge's agent concerning the date for the hearing on the TRO are so "intimately associated" with the judicial process that absolute immunity must be afforded these activities. A suit similar to Challenge's counterclaim was filed in *Carlsberg v. Gatzek,* 442 F.Supp. 813 (C.D.Cal.1977). In a civil enforcement proceeding brought by the Securities and Exchange Commission, SEC attorneys were sued because they, among other things, requested a preliminary injunction without giving the plaintiffs prior notice. The court concluded that the prosecutors had absolute immunity holding that the "request for preliminary injunction, the filing of the allegedly false affidavit, and the

---

1. Although *Imbler* involved a criminal prosecutor, the same doctrine of absolute immunity was extended to a governmental attorney engaged in civil enforcement proceedings in *Butz v. Economou,* 438 U.S. 478, 516–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978). *Imbler*

was recently reaffirmed by the Court in *Briscoe v. LaHue,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) in which the Court held that a police officer was immune from civil liability despite his perjured testimony at a criminal trial.

inclusion of the allegedly false statements in the complaint and other pleadings are all actions which clearly fall within this area of absolute immunity." *Id.* at 817.

██ Finally, the counterclaim alleges that the "[c]ounterclaim defendants or others acting on their behalf ... told ... television station KTVK–TV that the restraining order had been entered and ordered that the station discontinue television advertisements it had previously been broadcasting on Challenge's behalf ...." [2] Accepting for a moment the truthfulness of this allegation, we agree with the state that its efforts in attempting to enforce the TRO was a judicial function rather than an administrative or investigative function as Challenge contends. In *Goldschmidt v. Patchett,* 686 F.2d 582 (7th Cir.1982), the state's attorney sent the plaintiff a letter advising him that his advertising appeared to violate a provision of the Illinois code. The letter said that the attorney felt he should inform the plaintiff of the law and sent a copy of the law to him. Similarly, Sendrow had a copy of the TRO delivered to KTVK. The plaintiff filed suit against the attorney under 42 U.S.C.A. § 1983. The court found that the prosecutor's activities were not "investigative" and that absolute immunity applied. Sendrow's actions are likewise protected by absolute immunity.

The case relied upon by Challenge, *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), is plainly inapplicable. In *Marrero,* the prosecutors participated in an allegedly illegal search and seizure prior to the initiation of litigation and allegedly defamed the plaintiff. The court correctly held that assisting the police in obtaining evidence was investigative and that the defamatory statements were "unrelated to any judicial proceeding." *Id.* at 505–506.

Finally, Challenge deposed Michael Schweitzer the general sales manager of KTVK. Schweitzer testified unequivocally that he discontinued Challenge's advertising solely based upon his own reading of the TRO and that Sendrow did not order him to discontinue the advertising. Schweitzer testified that he stopped running the ads completely on his own volition and that Sendrow did nothing that caused him to act in that manner and that it was left to Schweitzer to make his own decision. Thus, because Sendrow's activities were absolutely privileged and because it appears that Challenge could offer no facts to support its allegation, there is no merit to this last contention. In short, the trial judge correctly dismissed the counterclaim as to Sendrow and Gniadek for the reasons that their actions were absolutely privileged.

## III.  ATTORNEYS' FEES

Upon prevailing in their motion to dismiss the counterclaim, the state requested attorneys' fees against Challenge in the amount of $4,140. Fees were sought pursuant to A.R.S. § 12–341.01, 42 U.S.C.A. § 1988, and under the so-called "bad faith" theory. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). The trial judge stated as follows:

> It is the Court's opinion that while the counterclaim at its inception may not have been frivolous, unreasonable or groundless, after the defendant learned of Mr. Sendrow's conversation with Channel 3, the defendant nonetheless continued the litigation after it became clear that further prosecution was groundless.

The court granted attorneys' fees in the amount of $2,500 taking into account the period of time "where the possibility of a counterclaim may not have been unreasonable or groundless." Challenge urges on appeal that the "issues presented were fairly debatable and were at all times present-

---

**2.** Nowhere in the counterclaim does Challenge allege that this conduct violated its civil rights. In order to state a claim under 42 U.S.C.A. § 1983, one must allege that the defendant acted "under color of law" and that the defend-

ant's conduct violated rights protected under the statute. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

ed in good faith." Thus, it argues that the trial court erred in awarding fees in favor of the state and even if fees should be awarded, the amount was excessive because only $768 in time was incurred subsequent to the Schweitzer deposition. In its cross-appeal, the state argues that the full amount of fees should have been granted and that fees should also have been assessed against Challenge's counsel.

The United States Supreme Court has held that the appropriate standard to determine whether a prevailing defendant in an action filed under 42 U.S.C.A. § 1983 is entitled to recover attorneys' fees is whether the " 'action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' " *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (quoting *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). Thus, we do not consider whether fees may be recoverable under A.R.S. § 12–341.01 or under the "bad faith" theory.

After carefully reviewing the record in this matter, and in particular, the deposition of Michael Schweitzer, we conclude that the trial judge erred in reducing the fee award requested by the state. The trial judge apparently concluded that all claims with the exception of the claim relating to the advertising by KTVK were groundless but that the advertising claim only became groundless once Schweitzer's deposition was taken. We think this conclusion is in error for two reasons.

First, although the advertising issue was hotly disputed below and did consume much of the parties' attention on appeal, the counterclaim is completely defective insofar as it fails to allege that the enforcement of the TRO caused Challenge's civil rights to be violated. There is absolutely no contention in the counterclaim that the enforcement of the TRO violated Challenge's constitutional rights. Second, Schweitzer was asked at his deposition whether he spoke to counsel for Challenge prior to the time of the filing of the counterclaim. Schweitzer

did speak with an attorney for Challenge, and testified in his deposition that he told the attorney that Sendrow did not order him to stop advertising. Nevertheless, Challenge filed the counterclaim and alleged in the counterclaim that KTVK was ordered to stop the advertising.

It is a serious undertaking to file suit against an attorney based upon his or her performance of official responsibilities in protecting the public interest. If we expect to attract talented and well-motivated lawyers to serve the public interest, we cannot allow them to be subject to frivolous and vexatious litigation. Not only will these lawyers look elsewhere for employment, but the enforcement of state laws will suffer because of the chilling effect that such litigation will have upon those charged with enforcement. Although this court will not hesitate to condemn "overreaching" on the part of administrative agencies, *Merrick v. Rottman,* 135 Ariz. 594, at 599, 663 P.2d 586, at 591 (App.1983) (Contreras, J. specially concurring), we likewise will not close our eyes to blatant efforts at frustrating legitimate enforcement proceedings. This is not a case which falls into the category described by the old adage—the best defense is a good offense. But rather, Challenge, by attempting to make the individual attorneys personally liable, tried to frustrate the prosecutors' efforts at enforcing state laws.

Challenge's actions below included a motion to disqualify the entire office of the attorney general. Counsel for Challenge filed a complaint against Sendrow and Gniadek with the State Bar of Arizona which concluded that their conduct, as alleged in the counterclaim, did not "involve any ethical issues concerning professional conduct." And, as stated above, the circumstances surrounding the issuance of the TRO were fully discussed on September 26 before the trial judge who stated unequivocally that he viewed the matter as a "misunderstanding." Nevertheless, a counterclaim was filed alleging that Sendrow's actions were done "willfully, knowingly and deliberately" to deprive Challenge of its

constitutional rights. And finally, although Challenge made much to do about the discontinuance of its advertising, it made no allegation in its counterclaim that this violated its first amendment rights.

■ Therefore, the judgment dismissing the counterclaim is affirmed. Attorneys' fees in the full amount requested by the state shall be assessed against Challenge.[3] This matter is remanded to the superior court for proceedings consistent with this opinion.

GREER, Acting P.J., and CONTRERAS, J., concur.

---

**3.** We decline to impose fees against Challenge's counsel because we cannot say from this record that counsels' conduct constituted a willful abuse of the judicial process. *Roadway Express, Inc. v. Piper,* 447 U.S. at 766, 100 S.Ct. at 2464.