921 P.2d 697

STATE of Arizona; Grant Woods, Attorney General and his wife, Jane Doe Woods; Thomas McClory, Assistant Attorney General, and his wife, Jane Doe McClory; Department of Health Services, et al., Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Jeffery S. Cates, a judge thereof, Respondent Judge,

Corliss FORD, a single woman, Real Party in Interest.

No. 1 CA–SA 96–0009.

Court of Appeals of Arizona, Division 1, Department A.

June 27, 1996.

Grant Woods, Attorney General by Raymond P. Lee and Thomas J. Dennis, Assis-

tant Attorneys General, Phoenix, for Petitioners.

David C. Larkin, P.C. by David C. Larkin, Phoenix, for Real Party in Interest.

## OPINION

WEISBERG, Judge.

Petitioners have filed a petition for special action seeking review of the trial court's denial of their motion to dismiss. They argue that they are immune from suit and that the claims are time-barred. Because petitioners do not have an adequate remedy by appeal on these issues, see City of Phoenix v. Yarnell, 184 Ariz. 310, 315, 909 P.2d 377, 382 (1995) (immunity); Lim v. Superior Court, 126 Ariz. 481, 482, 616 P.2d 941, 942 (App. 1980) (statute of limitations), we have entered an order accepting jurisdiction over this petition, with a written decision to follow. For the following reasons, we grant relief in part and deny relief in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Corliss Ford operated an adult care facility. On June 12, 1992, the Department of Health Services ("DHS") through the Office of the Attorney General filed a three-count complaint against Ford, alleging that she I) was operating a health care institution without a license, II) was operating an unregistered residential care home, and III) had abused and/or neglected two of the elderly residents in her facility. The Attorney General and DHS sought a temporary restraining order and preliminary and permanent injunctions enjoining Ford from operating any type of residential care facility until she had satisfied the statutory licensing requirements. The trial court granted injunctions based upon the licensing and registration allegations of Counts I and II. Following trial, though, the court found that there was no evidence of abuse or neglect, and therefore denied any relief based upon Count III.

The court also found that the Attorney General and DHS had failed to disclose certain information that had been requested by Ford, which prejudiced her defense.

On June 28, 1994, Ford filed a civil suit against the State, Attorney General Grant Woods and his wife, Assistant Attorney General Thomas McClory and his wife, and DHS (collectively, "defendants"), asserting the following claims:

1. Violation of her civil rights pursuant to 42 U.S.C. § 1983, arising from the Attorney General and DHS's a) continuance of the prosecution despite allegedly learning on June 28, 1993 that the claims were "baseless" and b) nondisclosure of information;

2. Malicious prosecution, based on continuing the prosecution;

3. Abuse of process, based on continuing the prosecution;

4. Defamation, based upon statements made by Assistant Attorney General Robert Carey on June 12, 1992.

Defendants moved to dismiss the complaint on the grounds of improper service, absolute prosecutorial and statutory immunity, and failure to comply with the statute of limitations and Ariz.Rev.Stat. Ann. ("A.R.S.") section 12–821.[1] By minute entry dated April 24, 1995, the trial court, without reaching defendants' immunity arguments, dismissed the complaint, basing its ruling on A.R.S. section 12–821.

Before the court signed the judgment, however, Ford filed a motion to amend her complaint. The motion to amend sought to amend the complaint by adding a false light invasion of privacy claim, and an additional defamatory statement to her defamation claim, both of which arose from statements made by Carey to the press in January 1994.[2] Because these statements had been made within one year of the filing of her original complaint, Ford argued that the false light

---

1. A.R.S. section 12–821 requires that claims against a public entity or employee be filed within one year of the accrual of the action.

2. In her subsequently filed amended complaint, Ford abandoned any claim arising from the original June 12, 1992 statements, and based her defamation claim solely on the January 1994 statements. In addition, she added these statements as a basis for her § 1983 and § 1985(3) claims.

and defamation claims were not time-barred by A.R.S. section 12–821. In addition, she sought to add a claim under 42 U.S.C. § 1985(3) for conspiracy to violate her civil rights, and a prayer for injunctive relief. She argued that these claims and the original § 1983, malicious prosecution, and abuse of process claims were not time-barred because they had not accrued until February 25, 1994, when the State's complaint against her had been finally adjudicated.

Defendants responded that the new defamation and false light claims did not relate back, and thus were barred by A.R.S. section 12–821, because the January 1994 statement had occurred more than one year before Ford filed her motion to amend. They also renewed their argument that the remaining claims were barred by absolute prosecutorial immunity.

The trial court granted the motion to amend, concluding that Ford's false light and defamation claims related back to her original complaint because they arose out of the same transaction: the State's prosecution of the civil action against Ford. It also concluded that Ford's other claims were not barred because Carey's January 1994 statements had been made in a television interview not protected by absolute prosecutorial immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).[3]

Defendants then repeated their arguments in a motion to dismiss, which was denied. Defendants have now brought this special action, arguing that Ford's false light and defamation claims are time-barred and that they are absolutely immune from suit with respect to the remaining claims.

## DISCUSSION

### A. *Prosecutorial Immunity*

Defendants argue that the trial court erred by not dismissing Ford's § 1983, § 1985(3), malicious prosecution, and abuse of process

claims on the grounds of prosecutorial immunity.[4]

Prosecutors are generally immune from civil liability for actions taken in their official capacities. *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976). This immunity is absolute when the prosecutor acts within the scope of his or her authority and in a quasi-judicial capacity. *Gobel v. Maricopa County*, 867 F.2d 1201, 1203 (9th Cir.1989). The prosecutor's "scope of authority" includes those activities with some connection to the general matters committed to the prosecutor's control or supervision. *Id.* "Quasi-judicial" activities are those that are intimately associated with the judicial process. *Id.* (citing *Imbler*, 424 U.S. at 430, 96 S.Ct. at 994–95). But a prosecutor's conduct while acting as an administrator or investigative officer is not "quasi-judicial" and, therefore, does not enjoy absolute immunity. *See Challenge, Inc. v. State*, 138 Ariz. 200, 204, 673 P.2d 944, 948 (App.1983). Accordingly, a court must apply a "functional analysis" to determine whether absolute immunity exists: it must examine the nature of the prosecutor's activities. *Gobel*, 867 F.2d at 1203; *Challenge*, 138 Ariz. at 204, 673 P.2d at 948. Furthermore, an examining court must disregard the intent, motive, or state of mind that the prosecutor had when performing the activity in question. *Ashelman v. Pope*, 793 F.2d 1072, 1077–78 (9th Cir.1986).

Absolute prosecutorial immunity is not limited to criminal prosecutions, but extends to civil enforcement proceedings, as well. *Butz v. Economou*, 438 U.S. 478, 516–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978); *see also Challenge*, 138 Ariz. 200 n. 1, 673 P.2d 944 n. 1 (applying absolute prosecutorial immunity to prosecutor instigating civil suit for violation of Arizona Consumer Fraud Act, securities law, and anti-racketeering statutes). Thus, if the prosecution here acted in a quasi-judicial capacity and within the

---

3. The trial court did not discuss defendants' claim that their conduct in continuing the prosecution was absolutely immune.

4. Defendants concede, however, that Ford's claim for equitable relief is not barred by prose-

cutorial immunity. *See Supreme Court of Va. v. Consumers Union*, 446 U.S. 719, 736–37, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980). We therefore remand that claim for further proceedings.

scope of its authority, absolute immunity is applicable.

■ Nevertheless, Ford argues that, because some actions by a prosecutor are not shielded by absolute immunity, any determination regarding immunity would be premature at this point since there exist "factual questions of what functions were performed by the defendants in the factual scenario for each of [Ford's] claims." Defendants, however, correctly respond that we must look to the actions alleged in Ford's complaint and, assuming them to be true, determine whether they were performed in a quasi-judicial capacity and within the prosecutor's scope of authority. We therefore consider each claim in turn.

### 1. *Malicious Prosecution and Abuse of Process Claims*

■ Ford's malicious prosecution and abuse of process claims were based on the filing of the complaint and the defendants' persistence in pursuing it despite their alleged knowledge that the claims were baseless. This conduct, however, is precisely the type protected by absolute prosecutorial immunity. "[A]bsolute immunity is warranted when the prosecutor acts as an advocate in initiating a prosecution and presenting the state's case." *Gobel,* 867 F.2d at 1203. This is true regardless whether the prosecutor has knowledge that the charge is baseless. *See Challenge,* 138 Ariz. at 204, 673 P.2d at 948. Accordingly, defendants have absolute immunity with respect to these claims.

### 2. *Civil Rights Claims*

■ For reasons discussed in the previous section, defendants are absolutely immunized from Ford's § 1983 and § 1985 claims ("civil rights claims") to the extent these claims were based on the filing and pursuit of the complaint.[5] The civil rights claims, though, alleged two additional bases: a) the State's discovery violation and b) the untrue statements made by Carey. As to the discovery violation, it is clear that absolute immunity

applies, since the conduct of discovery is both quasi-judicial and within the prosecutor's authority. *See Challenge,* 138 Ariz. at 204, 673 P.2d at 948 (prosecutor's misrepresentation, to the defendant's agent, of the date for a temporary restraining order hearing was "so 'intimately associated' with the judicial process that absolute immunity must be afforded these activities"). Thus, defendants are absolutely immune from Ford's civil rights claims to the extent they arise from the State's discovery violation.

■ Carey's statements to the press, however, require a different result because this conduct is not protected by absolute immunity. *Buckley,* 509 U.S. at 277–78, 113 S.Ct. at 2618; *Gobel,* 867 F.2d at 1205. Moreover, at oral argument before this court, defendants candidly conceded that only qualified immunity attaches to these statements. Accordingly, to the extent Ford's civil rights claims arise from Carey's statements to the press, we conclude that the trial court properly denied defendants' motion to dismiss. Therefore, on this limited basis, we remand these claims for further proceedings.

### 3. *Immunity of DHS*

Next, Ford claims, without support, that DHS is not a prosecutor for purposes of prosecutorial immunity. We disagree.

■ As previously discussed, prosecutorial immunity extends to civil enforcement proceedings. Moreover, absolute immunity extends to agency officials who perform functions analogous to a prosecutor. *Butz,* 438 U.S. at 515–16, 98 S.Ct. at 2915–16. The immunity of an administrative agency, of course, is limited to the same quasi-judicial functions for which immunity would apply to a traditional prosecutor. For example, an agency would not be entitled to absolute immunity for administrative or investigative functions, although such conduct may have been related to a prosecution. *Cf. Challenge,* 138 Ariz. at 204, 673 P.2d at 948. Ford's complaint, though, contains no allegations

---

**5.** Ford argues, without support, that absolute prosecutorial immunity does not apply to § 1985(3) conspiracy claims. This argument, however, is meritless. *See Ashelman,* 793 F.2d at

1078; *Agnew v. Moody,* 330 F.2d 868, 869 (9th Cir.), *cert. denied,* 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964).

against DHS for improper conduct in an administrative or investigative capacity.

In the instant case, DHS was charged with the discretionary responsibility of initiating, through the Attorney General, proceedings to obtain an injunction against Ford. A.R.S. § 36–430. Agency officials are absolutely immune from liability for initiating or continuing an administrative "proceeding subject to agency adjudication." *Butz*, 438 U.S. at 516, 98 S.Ct. at 2916. Consequently, DHS's decision to pursue the complaint against Ford is entitled to the same absolute immunity as that enjoyed by the Attorney General.

### B. *Statute of Limitations*

Finally, defendants contend that the trial court erred by not dismissing the false light and defamation claims in Ford's amended complaint. They point out that A.R.S. section 12–821 requires that claims against a public entity or employee be brought within one year after the cause of action accrues, and that Ford's false light and defamation claims were founded upon statements made in January 1994, while her motion to amend was filed in May 1995. Thus, defendants conclude, the claims were not filed within A.R.S. section 12–821's one-year limitation period.

Although Ford does not dispute this, she argues that the claims relate back to her original complaint, filed in June 1994, and therefore were timely. She relies upon Ariz. R. Civ. P. 15(c), which provides that a claim in an amended pleading relates back if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The trial court agreed with Ford, concluding that her false light and defamation claims related back to her original complaint because they "derive from the same transaction underlying her fourth claim for relief in her original

complaint, i.e., the prosecution of a civil action against [Ford] to revoke her nursing home license." We, however, agree with defendants.

We first note that Ford's amended complaint does not allege that Carey's January 1994 statements were related to the prosecution. In fact, Ford gives no insight into the substance of the statements, alleging only that they involved "major misrepresentations of her character and activities." The trial court, therefore, merely assumed that they derived from the underlying prosecution.

In any event, even if we assume *arguendo* that the January 1994 statements were related to the prosecution, these claims still did not, within the meaning of Rule 15(c), arise from the same conduct, transaction, or occurrence as her original complaint. The conduct from which these claims arise are the statements themselves, not the underlying prosecution. Moreover, the same statement was not alleged in each complaint.[6]

Each communication of a defamatory statement, even though identical in content, constitutes a separate publication, giving rise to a separate cause of action. Restatement (Second) of Torts § 577A(1) & cmt. a. Thus, where a magazine republishes a defamatory article, or a television station rebroadcasts a defamatory statement, the second publication gives rise to a second claim for defamation. As a result, a claim based on a subsequent statement does not arise from the same conduct, transaction, or occurrence as a claim based on the first statement, and therefore, under Rule 15(c), will not relate back to the earlier claim. *Burt v. CBS, Inc.*, 769 F.Supp. 1012, 1015–16 (S.D.Ohio 1991); *Foretich v. Glamour*, 753 F.Supp. 955, 962 (D.D.C.1990); *Rickman v. Cone Mills Corp.*, 129 F.R.D. 181, 185–86 (D.Kan.1989); *Jensen v. Times Mirror Co.*, 634 F.Supp. 304, 316 (D.Conn.1986); *Herron v. KING*

---

**6.** Ford contends that the original and amended complaints both involve the same statements, claiming that the original complaint alleged that Carey had made defamatory statements without specifying a date, and that the amended complaint merely supplied the January 1994 date. This argument is belied by the original complaint's specification of a June 12, 1992 date. In

addition, in her motion to amend, Ford explicitly stated that Carey's January 1994 statements were "additional defamatory remarks," and that her amended complaint sought to "include in her claim for defamation the January 1994 date of a defamation made on Channel 12 News by the same Assistant Attorney General Robert Carey who defamed Mrs. Ford on June 12, 1992."

*Broadcasting Co.,* 109 Wash.2d 514, 746 P.2d 295, 300 (1987); *see also Barnes v. Callaghan,* 559 F.2d 1102, 1104 (7th Cir.1977) (amended claim of slander did not relate back to employment discrimination claim because based on occurrences subsequent to those set forth in original claim). The same rule applies to claims of invasion of privacy based upon publications, similar to Ford's false light claim. *See Jackson v. Ideal Publishing Corp.,* 274 F.Supp. 318, 320 (E.D.Penn.1967) (invasion of privacy claims based upon magazine's publication of plaintiff's unauthorized picture in advertisement for three successive monthly issues).

Accordingly, the false light and defamation claims in Ford's amended complaint do not relate back to her original complaint, and the trial court erred by not dismissing them as time-barred pursuant to A.R.S. section 12–821.

## CONCLUSION

Defendants are absolutely immune from liability in Ford's malicious prosecution and abuse of process claims. In addition, Ford's false light and defamation claims are time-barred. We therefore remand with directions to dismiss these claims. We also remand for further proceedings on Ford's claim for equitable relief and, insofar as they arise out of Carey's January 1994 statements, her civil rights claims.

CONTRERAS, P.J., and TOCI, J., concur.